H525menA

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,              New York, N.Y.

 4                  v.                       17 Cr. 248 (VSB)

 5    MICHAEL MENDLOWITZ and RICHARD
      HART,
 6
                      Defendants.
 7
      ------------------------------x

 8
                                            May 2, 2017
 9                                          3:37 p.m.

10
      Before:
11
                      HON. VERNON S. BRODERICK,
12
                                            District Judge
13

14

15                          APPEARANCES

16    JOON H. KIM
           Acting United States Attorney for the
17         Southern District of New York
      BY:   DAVID RAYMOND LEWIS
18         Assistant United States Attorney

19    BRAFMAN & ASSOCIATES, P.C.
           Attorneys for Defendant Mendlowitz
20    BY: MARC AGNIFILO
           JACOB KAPLAN
21
      LAW OFFICE OF ERIC SEARS, P.C.
22         Attorney for Defendant Hart
      BY: ERIC SEARS
23

24

25
```

H525menA

```
 1              (Case called)

 2              THE COURT:  If counsel could please identify

 3    themselves for the record?

 4              MR. LEWIS:  Good afternoon, your Honor.  David Raymond

 5    Lewis for the government.

 6              THE COURT:  Mr. Lewis.

 7              MR. AGNIFILO:  Good afternoon, your Honor.  My name is

 8    Marc Agnifilo, with me is Jacob Kaplan, and we represent

 9    Mr. Mendlowitz.

10              Thank you, you Judge.

11              THE COURT:  All right.

12              MR. SEARS:  Good afternoon, your Honor.  Eric Sears.

13    I have been asked to be appointed for Mr. Hart and I have

14    handed up the financial affidavit.

15              THE COURT:  Yes.  I have the financial affidavit here.

16              Mr. Hart, do you swear to the contents of the

17    financial affidavit which you appear to have signed?

18              DEFENDANT HART:  Yes.

19              THE COURT:  I am going to approve Mr. Sears to

20    represent you.

21              So, we are here for initial presentment and

22    arraignment; is that correct, Mr. Lewis?

23              MR. LEWIS:  Yes, your Honor.

24              THE COURT:  Mr. Mendlowitz, Mr. Hart, I am Judge

25    Vernon Broderick.  The purpose of this proceeding is to inform
```

H525menA

1   you of the rights that you have, inform you of the charges

2   against you, consider whether counsel should be appointed for

3   you, and decide under what conditions you can be released.

4            Mr. Lewis, the date and time of arrest?

5            MR. LEWIS:  6:00 this morning, your Honor.

6            THE COURT:  Okay.

7            Now, Mr. Mendlowitz and Mr. Hart, you have the right

8   to remain silent.  You are not required to make any statements.

9   Even if you have made statements to the authorities, you need

10  not make any further statements.  Anything you say can be used

11  against you.  You have the right to be released, either

12  conditionally or unconditionally pending trial, unless I find

13  that there are no conditions that would reasonably assure your

14  presence in court and the safety of the community.  You have

15  the right to be represented by counsel during all court

16  proceedings including this one and during all questioning by

17  authorities.  If you cannot afford an attorney, I will appoint

18  one to represent you and I have done so with regard to

19  Mr. Hart.  Okay.

20           Now, with regard to the indictment in the action,

21  Mr. Mendlowitz, have you received a copy of the indictment?

22           DEFENDANT MENDLOWITZ:  Yes.

23           THE COURT:  Have you had an opportunity to go over it

24  with your attorneys?

25           DEFENDANT MENDLOWITZ:  Yes.

H525menA

| | |
|---|---|
| 1 | THE COURT:  And do you waive its public reading? |
| 2 | DEFENDANT MENDLOWITZ:  Yes. |
| 3 | THE COURT:  And how do you plead? |
| 4 | DEFENDANT MENDLOWITZ:  Not guilty. |
| 5 | THE COURT:  Okay. |
| 6 | Mr. Hart, have you received a copy of the indictment |
| 7 | in this action? |
| 8 | DEFENDANT HART:  Yes. |
| 9 | THE COURT:  Have you had an opportunity to go over it |
| 10 | with Mr. Sears? |
| 11 | DEFENDANT HART:  Yes. |
| 12 | THE COURT:  Do you waive its public reading? |
| 13 | DEFENDANT HART:  Yes. |
| 14 | THE COURT:  And how do you plead? |
| 15 | DEFENDANT HART:  Not guilty. |
| 16 | THE COURT:  Okay.  And I take it from the pretrial |
| 17 | services report that I just read, am I correct, Mr. Mendlowitz |
| 18 | that you are a citizen of the United States? |
| 19 | DEFENDANT MENDLOWITZ:  Yes. |
| 20 | THE COURT:  And Mr. Hart, you are a citizen of the |
| 21 | United States? |
| 22 | DEFENDANT HART:  Yes. |
| 23 | THE COURT:  Okay. |
| 24 | So, before I just get into the substance of the case |
| 25 | going forward, having done the initial presentment and |

H525menA

1    arraignment, I should mention I was an Assistant United States

2    Attorney years ago.  In connection with my work I did a trial

3    with Mr. Lewis back in 1997, and I just wanted the parties to

4    be aware of that.  It was a long time ago and I actually had to

5    look at my trial notebook to figure out exactly how long ago it

6    was.  Okay.

7            So, let me ask this.  Mr. Lewis, what sort of

8    discovery do we have in this action?

9            MR. LEWIS:  Your Honor, we have pretty substantial

10   discovery.  A great deal of it is in electronic form.

11           The government executed a search warrant on the

12   business of Commerce Payment Systems in July of 2015.  Among

13   other things, agents took nine servers out of the premises.

14   That's, of course, all been copied onto a set of hard drives

15   and my office has been copying those hard drives and getting

16   them ready to produce, but it is very substantial.  Moreover,

17   if we just sort of took those drives and handed them over I

18   suppose that would comply, technically, with our discovery

19   obligations, but we are trying to be more helpful to the

20   defense than that.  We have prepared a number and worked with,

21   in this investigation, a number of databases and, technically,

22   those databases are subsets of the large production, but we

23   still think it would be helpful to the defense and fair to the

24   defense to produce those databases.

25           So, it's going to take some time and, frankly, it is

H525menA

```
 1    going to take a lot of my working with our IT staff to figure
 2    out how to get this discovery all together.  I guess I would
 3    like to throw out something on the order of seven weeks, but
 4    frankly, it will be an ongoing education with my IT staff.
 5              THE COURT:  Sure.  And let me make a suggestion.  Then
 6    I think we should turn to the issues of bail and perhaps I
 7    should have done that first, but let me ask Mr. Lewis, in
 8    connection with your communications of the staff of the United
 9    States Attorney's office, speak with defense counsel also and
10    loop them in to, they may be familiar with certain of the
11    databases, there may be preference for one thing over another.
12    They may think they may have someone in-house who may have an
13    expertise in electronic discovery and may have some thoughts on
14    that.  Just to see if we can have agreements on the front end
15    so that you don't produce something and then it takes time to
16    sort things out.  But let me hear, is there -- with regard to
17    bail, have the parties -- Mr. Sears?
18              MR. SEARS:  Before we get to bail can I just have a
19    moment to confer with the assistant?
20              THE COURT:  Sure.
21              (Counsel conferring)
22              MR. LEWIS:  Does your Honor want to hear from the
23    parties on bail?
24              THE COURT:  I do.
25              I should probably say, just for the defense counsel's
```

H525menA

1    purposes, Mr. Lewis and I did try a case back in 1997.  We

2    hadn't seen each other, with the exception of maybe one or two

3    times in the time period, maybe three times, time periods

4    between then and we, since he returned to the United States and

5    resumed his duties here in the Southern District of New York

6    which I guess was in maybe -- I don't even know, a couple

7    years?

8           MR. LEWIS:  Your Honor, I am not sure counsel is

9    aware.  I was working with the U.S. Department of Justice

10   abroad from 2002 until the end of 2014 and I came back to the

11   U.S. Attorney's office at the end of 2014.

12          THE COURT:  Okay.

13          MR. LEWIS:  And I have seen you a few times since

14   then.

15          THE COURT:  No, I appreciate that.

16          So, I just wanted to be clear just concerning the

17   nature of my contact with Mr. Lewis over the years.  But, yes,

18   let's hear about bail.

19          MR. LEWIS:  Your Honor, with respect to

20   Mr. Mendlowitz, we have an agreement.  The agreement, a $1

21   million personal recognizance bond, to be secured by the

22   residential property, the home, Mr. Mendlowitz' own signature

23   and the signature of one additional financially responsible

24   person to be interviewed by the U.S. Attorney's office.  The

25   government is willing to consent to release today contingent

1    upon the signature of the second financially responsible person

2    by the end of this week and the securing of the real estate

3    within three weeks from today.

4            In addition, your Honor, I believe we have an

5    agreement on the conditions that are described at the end of

6    the pretrial services report which is pretrial services

7    supervision as directed by the pretrial services office, travel

8    restricted to Southern and Eastern Districts of New York,

9    surrender of any passports with no new applications.  We would

10   ask the defendant to confirm on the record that neither he nor

11   any members of his immediate family have passports other than

12   U.S. passports.  And let me just read the last paragraph, if I

13   could, Judge, of the report?

14           THE COURT:  Sure.

15           MR. LEWIS:  There is talk in the last paragraph of the

16   report about urinalysis.  We follow the lead of the pretrial

17   services office on that.

18           MR. AGNIFILO:  One second, Judge?

19           (Pause)

20           MR. LEWIS:  Just to put it on the record, it says,

21   Judge, that Pretrial Services recommend that the defendant

22   submit to a single urinalysis upon release, as directed, and if

23   the results return positive for an illicit substance, that he

24   be subject to drug testing and treatment.

25           THE COURT:  Why don't we do them one at a time.

H525menA

```
 1              Do all of those conditions, including the last one
 2    which Mr. Lewis just read in --
 3              MR. AGNIFILO:  That's all fine, Judge.
 4              THE COURT:  All right.
 5              MR. AGNIFILO:  And just to complete the record, I know
 6    we have until Friday, we do have my client's mother-in-law here
 7    in court and she would be available to speak to the government
 8    and co-sign the bond today, if she's found appropriate to do
 9    so, by the United States Attorney's office.
10              THE COURT:  I will leave that -- again, there is an
11    interview process I don't know whether that can occur today and
12    if it can, fantastic, and she, again, passes the financially
13    responsible person test that the government is going to apply,
14    then it shouldn't be a problem.
15              MR. AGNIFILO:  Very good.  Otherwise, it is all
16    agreeable.
17              THE COURT:  All right.
18              And with regard to Mr. Hart?
19              MR. LEWIS:  Your Honor, it is my understanding that
20    with regard to Mr. Hart we don't have an agreement.  The
21    government is guided by, again, by the recommendations of the
22    pretrial service office.  We are aware of Mr. Hart's limited
23    financial means, the face amount of the personal recognizance
24    bond is probably a little beside the point, perhaps $250,000,
25    but what's of more interest and where we have not been able to
```

1    agree, the government, at a minimum, believes that the

2    defendant ought to be able to come up with two financially

3    responsible persons other than himself -- other than himself or

4    his spouse to secure the bond.  I understand that he doesn't

5    own a home so we are not asking for that to be posted, but it

6    is my understanding that the defendant takes the position that

7    he -- we don't have agreement on that condition.

8              I haven't really discussed in detail the other

9    conditions in the report.  I would sort of assume that on those

10   we are pretty much in agreement, which is pretrial services

11   supervision as directed, drug testing treatment as directed by

12   pretrial services.  There is some history in that regard

13   described in the report, Judge.  Mental health evaluation

14   treatment as deemed necessary by pretrial, travel restricted to

15   the Southern and Eastern districts of New York and, again,

16   surrender of any passports with no new applications.

17             Mr. Sears?

18             MR. SEARS:  We have no objections to those conditions.

19             THE COURT:  So, with regard to the co-signers,

20   Mr. Sears, I mean, look.  Just to be clear, and I am sure

21   counsel has explained to their clients, unlike in state court,

22   you actually have to put up the money and obviously the PRB is

23   just a bond, in Mr. Mendlowitz's situation it is secured by

24   residential property.  My understanding, Mr. Hart, is that the

25   proposal that it would just be a bond for you and it would be

1    secured in a way by the financially responsible people.  I

2    think probation had indicated to Mr. Lewis has made a request

3    for three, so let me hear Mr. Sears with regard to that.

4         MR. SEARS:  Your Honor, first of all, I do think I

5    should note a few things about Mr. Hart's history.

6         His wife and mother-in-law are present in court seated

7    in the first row.

8         THE COURT:  Okay.

9         MR. SEARS:  He was born in New York.  He has lived in

10   New York all his life.  I think it fair to say and I have

11   looked at the -- taken a preliminary look at the indictment, I

12   think it is fair to say that of the two defendants he is the

13   less culpable.  I mention that -- he of course denies his

14   culpability entirely and we do want an opportunity to litigate

15   this case, and it appears from what the government has said and

16   the nature of the case and the type of discovery, that it's

17   going to take quite a bit of time for that litigation to occur

18   and I am hoping that Mr. Hart does not have to sit in jail

19   while we are trying to litigate this case.  I don't think that

20   would be appropriate, particularly in light of the fact t hat

21   what we suggest to be the more culpable defendant is actually

22   going to be out on bond because he is in better financial shape

23   than Mr. Hart.

24         Mr. Hart has lived in New York, as I say, all his

25   life.  He has no record.  He works hard.  He lives on Long

1    Island, he has lived there for years, he lives with his wife.

2    They have a two and a half-year-old child that I am informed is

3    autistic and who presently receives an extraordinary amount of

4    care under New York State's Early Intervention Program --

5    applied behavioral therapy, occupational therapy, speech

6    therapy, social skills group, all of that being paid for by the

7    State under the Early Intervention Program that New York has in

8    place but only up to 3 years old.  So, in a few months,

9    Mr. Hart is going to be responsible to pick up all of those

10   expenses for his child.  There is nobody else to do that.  It

11   would be tragic for him to remain in custody and not be able to

12   go back to work.  He does have a job --

13              THE COURT:  Let me, just to be clear.

14              MR. SEARS:  Yes?

15              THE COURT:  Mr. Lewis hasn't asked for him to be

16   detained.

17              MR. SEARS:  I understand.

18              THE COURT:  One way or the other he is being released

19   on bail today.

20              MR. SEARS:  Let me get to the point then --

21              THE COURT:  Yes.

22              MR. SEARS:  -- where I think your Honor is going.

23              Like many people, he does not, frankly, and I spoke to

24   him about this, he does not have people close to him that the

25   government is going to consider financially responsible.  We

13

H525menA

1   are happy to have his wife and his mother-in-law sign the bond

2   but they're not employed.  His wife takes care of their

3   autistic child and is not employed, they do not own the home,

4   they pay rent for that home.  His extended family, his parents

5   or whatever is left alive, lives down in Kentucky.  He barely

6   has contact with them.  So, if we have to, if we are given a

7   week or 10 days, whatever it is to get two financially

8   responsible co-signers, Mr. Hart doesn't think we are going to

9   be able to do that.  We have co-signers but I don't think

10  they're going to be judged by the government to be financially

11  responsible.  They certainly have moral suasion and of course

12  he is not a risk to go anywhere and he is not a danger to the

13  community.

14       In the pretrial services report in making the

15  recommendation that they do cite two factors, mental health

16  history -- I don't know why that would be a factor in this, he

17  has had some problems that he has dealt with -- and substance

18  abuse history.  Again, I don't know why that's at all relevant.

19  He has taken medications, none of which are illegal.

20       So, I'm going to ask your Honor to consider setting a

21  personal recognizance bond with two co-signers being his mother

22  and his wife rather than require them to be financially

23  responsible people of whom the government approves because I

24  don't think we are going to be able to do that and the

25  difference would be, as I say, his sitting in jail for an

H525menA

1   extended period of time and the consequences that would have on

2   his family.

3           THE COURT:  That's okay.  I think it is going to be --

4   Mr. Sears, I understand what you are saying.  I think pretrial

5   may have been pointing out some of the issues because they

6   thought that it might go to whether or not he would be able to

7   abide by the terms of the conditions of his release and, again,

8   I'm not saying one way or the other whether that's the case but

9   I am going to release Mr. Hart today.  I will have Mr. Hart's

10  wife and mother-in-law as co-signers, as well as one

11  financially responsible individual.  Mr. Hart will have,

12  Mr. Sears, 10 days to get that person signed up.  I think I

13  would like the signature, though, today of the -- and again I

14  understand your representation that they're -- but I still --

15  the U.S. Attorney's office can still interview them but they

16  can sign -- if the interview can't take place today, they can

17  still sign the bond for purposes of moral suasion and then the

18  U.S. Attorney's office can conduct their interview to make a

19  determination about whether or not one or both of them could

20  possibly be financially responsible.  But, I understand your

21  representation in that regard.

22          With regard to --

23          MR. SEARS:  Can I just interrupt?

24          THE COURT:  Yes.

25          MR. SEARS:  So, if I understand what your Honor is

H525menA

1    saying, the one financially responsible person, should the

2    government approve either one of his -- is it mother or

3    mother-in-law?

4               DEFENDANT HART:  Mother-in-law.

5               MR. SEARS:  Mother-in-law, or would satisfy if neither

6    one is financially responsible we have to get yet another

7    person.

8               THE COURT:  I would like a total of three in any

9    event.

10              MR. SEARS:  Correct; two can be people with moral

11   suasion.  That's why I was saying that based upon your

12   representations and my understanding that Ms. Hart -- and I

13   apologize, I am assuming that Mr. Hart's wife is at home caring

14   for their child and therefore isn't currently employed -- that

15   she would not necessarily meet the requirements and based upon

16   the representations with regard to Mr. Hart's mother-in-law,

17   that in all likelihood she won't either.  So, it is a total of

18   three.

19              I understand that Mr. Hart has indicated that he

20   doesn't have a passport but to the extent he does, I am going

21   to require the other conditions that are set forth in the

22   pretrial services report.

23              I will say this, Mr. Sears.  That's not without your

24   ability for recourse.  If, in fact, Pretrial Services

25   determines that some of these things are required, some of the

H525menA

1   treatment is required and you feel that that's excessive, I

2   will leave it open to you to make an application to me to

3   modify whatever their suggestion is or to be relieved from

4   that.  But I'm not going to require that Mr. Hart be detained

5   until he meets those conditions.  So, on his signature and the

6   signature of his wife and mother-in-law, he can be released

7   today and then we are still searching for the one financially

8   responsible person and I am, again, assuming that Mr. Hart's

9   wife and his mother-in-law do not meet that criteria.

10          Why don't we just say we assume -- I am assuming that

11  they do not.

12          MR. SEARS:  That's a fair assumption.

13          THE COURT:  So, let's plan on finding one financially

14  responsible individual over the next 10 days.

15          With regard to mr. Lewis' suggested seven weeks, it

16  doesn't -- I think in order for to us appear -- is it seven

17  weeks for us to come back here, Mr. Lewis, and assess?  Or

18  seven weeks to get the discovery out?

19          MR. LEWIS:  It was my hope, your Honor, that we would

20  be able to knock the discovery out in seven weeks.  We can

21  certainly update the Court and the parties in writing before

22  then, if that would be helpful.

23          THE COURT:  Why don't we set it down -- let me hear

24  from defense counsel with regard to that suggestion.  In other

25  words, I would also like to give you some time to at least get

H525menA

```
 1   a peek at what it is.  Obviously there is a search warrant --
 2   well, let me ask, and I apologize, Mr. Lewis, were there any
 3   post-arrest statements that you are aware of?
 4              MS. BOROFSKY:  No.
 5              MR. LEWIS:  No.  I did not know, your Honor, but I am
 6   being told they were not.
 7              MS. BOROFSKY:  No.  Sorry.
 8              THE COURT:  Obviously a search warrant.
 9              Post-arrest statements are often the type of material
10   evidence that might lead to a motion.  So, there is a search
11   warrant.  Mr. Lewis, can you produce the search warrant and the
12   return, if they haven't already, on a more expedited basis,
13   even if you can't get the electronic discovery?
14              MR. LEWIS:  Yes, Judge.  We can -- yes.  Ultimately,
15   we will have this very organized system where everything is
16   Bates stamped and so forth and so on but what we will do is we
17   will just produce that quickly and then probably produce it,
18   again, with Bates numbers.
19              THE COURT:  That's perfect.
20              MR. LEWIS:  All right.
21              THE COURT:  That's fine.
22              And obviously, I don't know to the extent that there
23   is -- and there may not be any paper discovery that can be
24   produced on a rolling basis after being Bates stamped, I.guess
25   what I am saying is I would like the discovery to be produced
```

H525menA

1    on a rolling basis and not to await all the electronic

2    discovery.

3              MR. LEWIS:  Yes, Judge.  As I stand here now, I can't

4    think of any discovery that hasn't been put into the computer

5    at all.

6              THE COURT:  All right.  Okay.

7              MR. AGNIFILO:  Just a couple of finishing things.

8              THE COURT:  Sure.

9              MR. AGNIFILO:  Just so the record is clear, I believe

10   the agents took my client's passport this morning, so that's

11   done.

12             THE COURT:  And he is not a citizen of any other

13   country?

14             MR. AGNIFILO:  That's correct.

15             And Mr. Lewis asked the question if my client or any

16   members of his family were citizens of another country or held

17   the passport of another country and the answer is, no, everyone

18   is an American citizen.

19             THE COURT:  Let's be clear about, how are you defining

20   family?

21             MR. AGNIFILO:  His wife and children.  That was the

22   specific question that he asked me.

23             THE COURT:  Okay.

24             MR. AGNIFILO:  In terms of the discovery, I am going

25   to follow your Honor's lead because I think it is right on the

1    money.  We have certain platforms that we have used.  I'm not

2    as computer literal, for instance, as my younger, better

3    looking colleague Mr. Kaplan.

4              THE COURT:  I thought you were going to say

5    Mr. Brafman.

6              MR. AGNIFILO:  Mr. Brafman is not the computer guy in

7    our firm I can assure, your Honor.

8              THE COURT:  I guess.

9              MR. AGNIFILO:  He looks to me and I look to

10   Mr. Kaplan.  That's how it works.

11             THE COURT:  Fair enough.

12             MR. AGNIFILO:  But there are platforms we use.  We

13   will communicate that with my colleague Mr. Lewis and we will

14   figure all of that out.  I am happy to come back to your Honor,

15   I know we are on your Honor's schedule and your Honor is going

16   to keep the case and that's wonderful.  So, whatever your Honor

17   wants, we will check in and so on.  We are happy to come back.

18   I think at the end of the day if we are talking about the

19   volume of discovery that we have, once we get our act together

20   in terms of a platform and getting them a hard drive of however

21   many hard drives and terabytes, the seven weeks will be eaten

22   up pretty quickly but I will defer to your Honor quickly.

23             THE COURT:  I was thinking of adding on a couple of

24   weeks on to that to allow counsel to review the materials -- to

25   first make sure it is in a user-friendly format, to allow

H525menA

1   counsel to review the materials with their clients if that is

2   everybody's desire, and then to come back here with an eye

3   towards motions --

4           MR. AGNIFILO:  Very good.

5           THE COURT:  -- and determining what the next steps

6   are.

7           So, Ms. Williams, why don't we say two and a half

8   months, so 10 weeks.

9           THE DEPUTY CLERK:  July 14th, is that okay?

10          THE COURT:  Okay.  What day of the week is that?

11          MR. LEWIS:  That's a Friday.

12          THE DEPUTY CLERK:  Friday.  At 11:00 a.m.

13          MR. AGNIFILO:  That's fine, Judge.

14          THE COURT:  Mr. Sears?

15          MR. SEARS:  I have a sentence before Judge Koeltl at

16  10:00.

17          THE DEPUTY CLERK:  12?

18          THE COURT:  Noon.

19          THE DEPUTY CLERK:  That's fine.

20          MR. AGNIFILO:  So the record is clear, is it your

21  Honor's intent that, pending the interview of my client's

22  mother-in-law, that she should sign the bond today as well and

23  she will make herself available over the next few days to be

24  interviewed by the government?

25          THE COURT:  If you can get the interview done today

H525menA

1  because I think she is being put forth, then I would like that

2  to happen.  I just view it as a little different than

3  Mr. Hart's co-signer because I think it is understood that they

4  are not financially responsible.

5          MR. AGNIFILO:  I understand.  I understand.  Okay.

6          THE COURT:  So, if it could occur today, that would be

7  my preference, but it was by the end of the week anyway while I

8  could think it was by the end of the week anyway that Mr. Lewis

9  had mentioned.

10          MR. AGNIFILO:  We will stay around and see if we can

11  do it today.  Thank you, Judge.

12          THE COURT:  Mr. Sears?

13          MR. SEARS:  I stood on Mr. Hart's, on his co-signers,

14  which we are basically conceding that the government is not

15  going to find them to be financially responsible.  Can they

16  just sign and not be interviewed or would they still have to be

17  interviewed?

18          THE COURT:  Well, and again I leave that to you --

19          MR. SEARS:  It is fine either way.  I am wondering

20  what to tell them to do.

21          THE COURT:  Look.  The bottom line is even though

22  they're not financially responsible, that the way that -- just

23  so everybody is on the same page, the way that the bond would

24  work, it would still be, if something -- and I'm not saying it

25  is going to, Mr. Hart, but if for some reason you violate the

H525menA

```
1    terms of your release and it turns out that you are going to

2    have to come back and I end up remanding you for whatever

3    reason -- I am not saying it necessarily would occur, but the

4    people who sign the bond could be responsible or would be

5    responsible for the full amount of the bond which is $250,000.

6    Obviously people who don't have the wherewithal, it could come

7    from one or it could come from all.  So, but so in connection

8    with that, Mr. Sears, the government I think may want to ask

9    questions just about assets and things like that, just to have

10   a record of it but --

11             MR. SEARS:  That's fine.

12             THE COURT:  They can sign today, absolutely.

13             MR. SEARS:  If there is any way that that interview

14   can take place today, I know it is a little bit of a hardship

15   for them to travel and the child and all that.

16             THE COURT:  Understood.  Understood.

17             MR. LEWIS:  Your Honor, when I get back to the office

18   I will see if we have staff available to do this.  If not, I'm

19   sure we can make arrangements to have the interviews conducted

20   over the telephone.

21             THE COURT:  Fantastic.  Thank you.

22             And Ms. William, I'm sorry.  July 10th?

23             THE DEPUTY CLERK:  July 14th.

24             THE COURT:   In light of the discussion we have had

25   here I am going to exclude the time between now and July 14th
```

H525menA

1    to allow time for the government to produce discovery, to allow

2    time for defense counsel to review the discovery with their

3    clients, and to determine whether any motions are appropriate

4    and I find that exclusion of time outweighs the interest of

5    each defendant and the public in a speedy trial.

6            So, we will come back here on July 14th.  If it --

7    well, we will come back here on July 14th.

8            Is there anything else we need to deal with today?

9            MR. AGNIFILO:  Nothing from us, Judge.

10           MR. LEWIS:  Nothing from us, Judge.

11           MR. SEARS:  Nothing, your Honor.  Thank you.

12           THE COURT:  Thank you very much, and I will see

13   everybody on July 14th.

14           We stand adjourned.

15                              o0o

16

17

18

19

20

21

22

23

24

25