```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :
UNITED STATES OF AMERICA,                            :
                                                     :
            v.                                       :
                                                     :        S2 17-CR-248 (VSB)
MICHAEL MENDLOWITZ,                                  :
    a/k/a "Moshe Mendlowitz,"                        :            **ORDER**
                                                     :
                         Defendant.                  :
                                                     :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/13/2019

VERNON S. BRODERICK, United States District Judge:

As the parties are aware sentencing is scheduled in this matter for Tuesday, December 10, 2019, at 3:00 p.m. Please note that the sentencing will be held in Courtroom 15A of the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York. Having reviewed the parties sentencing submission, it is hereby

ORDERD that the parties should prepared to either discuss/answer either at sentencing or prior to sentencing:

1. On page 30 of the Presentence Report ("PSR") it states "Defense counsel also objected to the Guidelines calculation, specifically the loss amount, and noted that a *Fatico* hearing may be warranted to address this issue." However, neither the sentencing submissions by Defendant Mendlowitz nor the Government's sentencing submission cite to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978) or *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1978), or appear to request a sentencing hearing on any issue.

    a. Does either party request a *Fatico* hearing?

    b. If so, on what issues is a *Fatico* hearing being requested?

    c. Please respond to this question by the close of business on Monday, December 9, 2019. In the absence of a request by the parties for a *Fatico* hearing, I recognize my authority to request such a hearing *sua sponte*, *United States v. Delacruz*, 862 F.3d 163, 175-76 (2d Cir. 2017), and reserve such decision depending upon the parties' responses to the questions posed in this order.

2. Paragraph 127 of the PSR refers to Defendant Mendlowitz having worked for Diamond Card Processing.

    a. Is there any evidence in the trial record that Defendant Mendlowitz was previously employed by Diamond Card Processing?

    b. Even if Diamond Card Processing is not mentioned by name, is there any evidence in the record that Defendant Mendlowitz had prior experience in the credit card processing industry?

3. Paragraph 60 of the PSR states that "According to EVO, an independent sales office (ISO) with a portfolio similar to CPS' was expected to have profit margins of 3.0%. The true market value of the service provided by EVO should have been about 3.0% of the total processing volume of any given merchant."

    a. Was CPS's profit margin the highest among EVO's ISOs?

    b. Where, if at all, is the 3% profit margin contained in the trial record?

    c. If the 3% profit margin is not specifically discussed were CPS's profit margins discussed/referred to in the trial record?

4. On page 42 of Defendant's sentencing submission it states "Under the [Government's] loss methodology, profits from processing revenue above 3.0% are treated as fraud **even if the customer agreed to higher rates and fees in a merchant application.**"

   a. Is it Defendant's position that in order to determine the loss amount it is necessary to conduct a customer by customer analysis?

   b. If so, what is the basis for this position under the Sentencing Guidelines and/or case law?

5. Is there evidence in the trial record concerning the cancellation rate of merchant customers of CPS versus the cancellation rate of other ISOs in EVO's portfolio of ISOs? If so, what were those rates?

6. With regard to the defense version of the offense conduct summarized in paragraphs 71 through 73 of the PSR and in Defendant's sentencing submission, (*see* Mendlowitz Sent. Mem. 27-35),[1] were not these arguments/points made to the jury and rejected by the jury as evidenced by their guilty verdict?

7. With regard to the alleged abusive behavior of Defendant's father:

   a. Were authorities ever contacted with regard to the father's conduct? If so, is there documentation of such contact?

   b. Were religious authorities ever contacted with regard to the father's abusive conduct? If so, what were the circumstances of such contact and who was contacted? Is there documentation of such contact?

---

[1] "Mendlowitz Sent. Mem." refers to the unredacted version of Defendant Michael Mendlowitz's Sentencing Memorandum, dated October 21, 2019. To the extent that this Order cites to exhibits to Defendant's sentencing submission, I utilize the citations and format used in Defendant's sentencing submission.

3

8. Paragraph 134 of the PSR states that "Reportedly, Mendlowitz consults for his mother-in-law's point of sale software, start-up company. Mendlowitz noted that the software is marketed to restaurants and the company is still in the development stage. He does not receive a salary."
   a. Has Defendant's mother-in-law contributed/given/loaned money to Defendant and/or Defendant's family since his arrest? If so, how much money? Is there documentation for the amount contributed/given/loaned?
   b. Have any other family members contributed/given/loaned money to Defendant and/or Defendant's family since his arrest? If so, how much money? Is there documentation for the amount contributed/given/loaned?
   c. Has anyone else contributed/given/loaned money to Defendant and/or Defendant's family since his arrest? If so, how much money? Is there documentation for the amount contributed/given/loaned?
9. Has the entire amount of the $500,000 home equity line of credit referenced in paragraph 131 been utilized? Are payments being made on this line of credit?
10. On page 5 of Defendant's sentencing submission and elsewhere Defendant asserts that his father ▮▮▮▮▮▮▮▮▮▮
    a. Is there documentation of ▮▮▮▮▮ in the sentencing record?
    b. Is there documentation for ▮▮▮▮▮▮▮▮▮▮ (see S. Mendlowitz-Belgrade Letter, Ex. B at 25), in the sentencing record?
    c. Is there documentation for the ▮▮▮▮▮ of Defendant's father. (Def. Sent. Mem. 6.)

IT IS FUTHER ORDERED that the parties should meet and confer concerning any proposed redactions to this Order, and submit any proposed redactions on or before Tuesday, December 10, 2019, at 11 a.m.

SO ORDERED.

Dated:  December 9, 2019
        New York, New York

                                                            _____
                                                            Vernon S. Broderick
                                                            United States District Judge