**Smith Villazor** LLP
250 West 55th Street, 30th Floor
New York, New York 10019
www.smithvillazor.com

Patrick J. Smith
patrick.smith@smithvillazor.com
T   212.582.4400

# SMITH | VILLAZOR

February 19, 2020

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Michael Mendlowitz*, S2 17-cr-0248 (VSB)

Dear Judge Broderick:

    We write with respect to the upcoming *Fatico* hearing, currently scheduled for March 3, 2020.  We recently learned that CPS merchant billing statements, covering three years of the superseding Indictment's relevant time period, have been destroyed.  This evidence—the only evidence that reflects actual customer billing—is highly relevant for the upcoming hearing, where the amount of loss is squarely at issue.  Since Your Honor ordered the *Fatico* hearing, we have undertaken significant work to prepare an analysis to present on March 3.  The recent discovery that three years' worth of billing records have been destroyed was shocking and deeply frustrating for both defense counsel and Mr. Mendlowitz.  It has also seriously impacted our preparation for the hearing.  For this reason, and as further explained below, we respectfully request a short adjournment of the *Fatico* hearing.  We would propose a date in April that is convenient for the Court and the parties, and we can meet and confer with the government regarding potential dates.

    Below, we provide further context regarding how we learned that this evidence was destroyed and why we need additional time to prepare for the hearing.

    The defense has consistently argued that any loss analysis in this case must be based on a comparison of the rates and fees that merchants agreed to pay versus what they were charged.  While the government disagrees, and has thus far presented a "top-down" approach to calculate loss, the government has known for years that the defense does not view its approach as reasonable or fair, and further, that the defense's view is that loss must be determined by comparing applications with actual billing records.

Hon. Vernon S. Broderick                                          February 19, 2020
Page Two

The parties discussed this issue at length in the context of plea discussions, we highlighted the issue in a letter to the Court in connection with co-defendant Rick Hart's sentencing (Dkt. No. 201), and the issue featured prominently in materials submitted to the Probation Department, and in the parties' sentencing materials. And, of course, issues related to the appropriate loss methodology were discussed at length at the December 10, 2019 hearing.

Once Your Honor ordered a *Fatico* hearing, we implemented a plan, in consultation with our expert, to conduct a loss analysis that would compare merchant applications to billing statements. To undertake that analysis, we first needed to request merchant materials (applications and corresponding statements for a given merchant) from EVO. One week after the December 10 hearing, we reached out to EVO's counsel to discuss the documents and data we needed. After much back-and-forth about what EVO would be willing to provide, EVO agreed, on January 17, 2020, to gather certain merchant materials for us, and on February 3, 2020, it produced those materials.

Upon review of these materials, we discovered that EVO had not provided *any* merchant statements from years prior to 2013. We sought clarification from EVO's counsel, and were told that merchant statements predating 2013 were no longer available because they fell outside of EVO's seven-year document retention policy, and because there was no applicable legal hold.[1]

The unavailability of any merchant statements prior to 2013 came as a shock to us and required us to rethink the feasibility and scope of the analysis we had planned to conduct.[2] We have since requested additional data from EVO from the 2013-2015 time period that we hope to use in our analysis, but this will take EVO additional time to pull, and for defense counsel and our expert to analyze in advance of the hearing.

Given the delays we have experienced with EVO (it took nearly seven weeks from our first outreach to receive the initial set of merchant materials), but more importantly, the significant discovery that three years' worth of data from the relevant time period was entirely unavailable, which required reassessment of our methodology and analysis, we do not believe that we will be prepared to proceed as scheduled on March 3 (or to produce documents on February 25 pursuant to the Court's February 5 Order (Dkt. No. 236)).

While we intend to address this fully at the *Fatico* hearing and in any post-hearing briefing, it is unfathomable that merchant statements from years prior to 2013, which is more than half of the applicable five-and-a-half-year time period, were not subject to a litigation hold or a similar, government-mandated retention obligation. Mr. Mendlowitz's conviction is not yet final, and the amount of any loss is a disputed issue that is the subject of the upcoming hearing. The relevant period in the superseding Indictment begins in 2010, and the government bases its loss amount,

---

[1] We do not know when these materials were destroyed. We note that EVO had previously made productions to the government that included merchant statements from this time period, and one of the merchant-witnesses that testified at trial (Mr. Robert Gostl) was a customer during this time period.

[2] While we do not know precisely how the inclusion or exclusion of data from 2010-2012 would impact our analysis, it is noteworthy that even according to data that the government utilizes in calculating loss, CPS's profits as a percentage of volume processed versus merchant billing are significantly lower in the earlier years of the relevant period.

Hon. Vernon S. Broderick                                                                                  February 19, 2020
Page Three

and its substantial sentencing request, on revenue generated during the entire relevant period. Even if loss were not in dispute, Mr. Mendlowitz has a right of appeal that if exercised may result in a new trial where this evidence will no longer be available. This is even more meaningful in a case where, because the government did not seek to prove a specific loss amount at trial, the existing trial record does not contain the information necessary to calculate loss. Despite all of this, somehow, the government did not find it necessary to ensure the retention of records that reflect actual customer billing.

As a result, Mr. Mendlowitz has been deprived of the opportunity to employ the method that is both necessary and appropriate to calculate a reasonable loss figure for the entire relevant period. The government's unwillingness to ensure preservation of this critical evidence is indicative of its long-standing approach to this case—a rigid refusal to consider evidence that does not strictly comport with its theories. The government has now gone a step farther, ensuring that Mr. Mendlowitz, the Court, and a future finder of fact cannot even consider highly relevant evidence because it has unilaterally determined that such evidence is not important enough to preserve.

The government opposes our adjournment request and intends to file an opposition.

                                                                    Respectfully submitted,

                                                                    /s/ Patrick J. Smith

                                                                    Patrick J. Smith
                                                                    Smith Villazor LLP