Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
www.smithvillazor.com

Patrick J. Smith
patrick.smith@smithvillazor.com
T   212.582.4400

# SMITH | VILLAZOR

February 24, 2020

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Mendlowitz*, S2 17-cr-0248 (VSB)

Dear Judge Broderick:

      We write in response to the government's February 21, 2020 letter (Dkt. No. 239) opposing our adjournment request (Dkt. No. 238).  Notably, the government's letter does not meaningfully address the destruction of evidence, or why the government allowed these records to be destroyed.  We wish to address a few key points that the government has raised.

      **First**, the government attempts to cast doubt on defense counsel's diligence in pursuing the records it needed.  The government was not privy to discussions between EVO and defense counsel and misunderstands the facts.  Here is how we attempted to pursue what we think we need to conduct an appropriate analysis of loss:

      On December 17, 2019, we contacted EVO to begin discussing the merchant materials we would need in advance of the hearing.  Counsel for EVO was initially resistant to producing additional merchant materials, stating in a December 19, 2019 email that the universe of 2,824 merchants for whom EVO had already produced materials to the government "should be sufficiently large for [our] purposes."

      In the face of this resistance, we sought to better understand the selection criteria that were used in producing those materials.  We needed to determine whether the set of materials EVO was pointing to had been selected on a sufficiently broad and unbiased basis.  We needed to determine, for example, if this set of materials represented merchants from a sufficient portion of the relevant period, and whether the nature of the government's production requests targeted certain merchants or transactions leaving the sample set biased in some way.  We asked EVO for that information on December 23, 2019 and did not receive a response until January 14, 2020 (though we followed up multiple times in the interim).  We quickly determined that the sample was not representative,

Hon. Vernon S. Broderick                                                                                February 24, 2020
Page Two

unbiased, or useable.  Of the 2,824 merchants, 2,611 were produced pursuant to a government request for all merchants onboarded between March and July of 2015.  This meant that over 92% of the sample purportedly came from a four-month period, where the relevant period spans over five years.  The 213 merchants that remained were produced because they were covered by EVO's audit, EVO's forensic review, or were, for reasons not identified to us, requested by the government.

We could not accept this as a representative or unbiased sample for our purposes, and so, we renewed our request for additional merchant materials, based on a random selection across the entire time period.  On January 17, 2020, EVO sent us a list of all CPS merchants, and on January 21, 2020, we sent EVO a list of 120 merchants (two merchants onboarded each month from January 2010 through December 2014, selected randomly) to produce materials for.  EVO produced those materials on February 3, 2020.  Only then did we discover that there were *no* merchant statements available prior to 2013.  In consultation with our expert, we considered whether and how our analysis should be modified as a result.  On February 14, 2020, we requested that EVO produce a limited set of additional merchant materials.  This request remains outstanding.

We were diligent in seeking the materials we reasonably believed necessary for the project.

**Second**, had EVO's February 3, 2020 production included the materials we requested, we would not have needed to seek an adjournment.  Instead, only upon review of the February 3 production did we discover that three years' worth of merchant statements had been destroyed.  The government is right to say that those materials will not "materialize in the event the *Fatico* hearing is adjourned."  But, understandably, the analysis we are undertaking must change based on the destruction of evidence, and a brief adjournment is entirely reasonable given these circumstances.

The government's statements that the "parties have the same records available to them" and that the parties "are both free to analyze and make arguments from those records" are unpersuasive, because, as the Court knows, the government's loss analysis does not depend on any customer-specific billing data.  We note with disappointment, but unfortunately not surprise, the government's callous response to the destruction of relevant evidence before the defendant has been sentenced, and despite the fact that he maintains full appellate rights.

**Third**, at the present time, and as the government recognizes, EVO has not produced additional merchant materials that defense counsel sought after determining how to supplement its analysis to address the lack of data for a three-year period.  Defense counsel does not know when EVO will produce these materials, but providing defense counsel and our expert with a week (and potentially less) to review and analyze these materials in advance of the hearing is not reasonable.  Moreover, the deadline for disclosure of documents to be presented at the hearing (February 25) is even sooner, and it may in fact be impossible for the defense to meet that deadline given the fact that requests remain outstanding.

                                                                Respectfully submitted,

                                                                /s/ Patrick J. Smith

                                                                Patrick J. Smith
                                                                Smith Villazor LLP