UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

                              :

UNITED STATES OF AMERICA,

                              :

         -against-

                              :         Case No. S2 17 Cr. 248 (VSB)

MICHAEL MENDLOWITZ,
    a/k/a "Moshe Mendlowitz,"         :

        Defendant.          :

                              :

-------------------------------------------------------- X

# DEFENDANT MICHAEL MENDLOWITZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR BAIL PENDING APPEAL

SMITH VILLAZOR LLP
Patrick J. Smith
Rodney Villazor
Brian T. Burns
250 West 55th Street, 30th Floor
New York, New York 10019
(212) 582-4400 (Telephone)
(347) 338-2532 (Facsimile)

*Attorneys for Defendant Michael Mendlowitz*

Dated:   June 30, 2021

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................. 2

Argument .................................................................................................................... 3

    I.  Mr. Mendlowitz is not likely to flee and poses no danger to the
       community. ..................................................................................................... 3

    II.  Mr. Mendlowitz's appeal raises substantial questions of law and fact likely
       to result in reversal, a new trial, or a non-custodial or shorter sentence. ........... 4

       A. The Court's exclusion of expert testimony raises a substantial
          question. ................................................................................................. 4

          1.  Relevant Background ..................................................................... 4

          2.  Argument ...................................................................................... 7

       B. Other evidentiary rulings present substantial questions. ........................... 14

          1.  Exclusion of Mr. Mendlowitz's statement relevant to the auto-
             population feature presents a substantial issue. ................................. 14

          2.  Admission of the EVO audit report presents a substantial
             question. .................................................................................... 16

       C. The loss calculation presents a substantial question. ............................... 18

Conclusion ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFTC v. Wilson*,
    13 Civ. 7884, 2016 WL 7229056 (S.D.N.Y. Sept. 30, 2016) ................................................... 12

*Paddack v. Dave Christensen, Inc.*,
    745 F.2d 1254 (9th Cir. 1984) ............................................................................................... 17

*United States v. Abuhamra*,
    389 F.3d 309 (2d Cir. 2004) ...................................................................................................... 3

*United States v. Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010) .................................................................................................... 11

*United States v. Amuso*,
    21 F.3d 1251 (2d Cir. 1994) ...................................................................................................... 8

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) .................................................................................................. 12

*United States v. Blum*,
    62 F.3d 63 (2d Cir. 1995) ........................................................................................................ 14

*United States v. Brandt*,
    196 F.2d 653 (2d Cir. 1952) .............................................................................................. 12, 13

*United States v. Certified Env. Servs., Inc.*,
    753 F.3d 72 (2d Cir. 2014) ...................................................................................................... 16

*United States v. Diallo*,
    40 F.3d 32 (2d Cir. 1994) ............................................................................................. 7, 13, 14

*United States v. Dupre*,
    462 F.3d 131 (2d Cir. 2006) .............................................................................................. 12, 16

*United States v. Garcia*,
    340 F.3d 1013 (9th Cir. 2003) ................................................................................................... 2

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015) .............................................................................................. passim

*United States v. Morgan*,
    53 F. Supp. 3d 732 (S.D.N.Y. 2014) ......................................................................................... 7

*United States v. Newkirk,*
  684 F. App'x 95 (2d Cir. 2016) ........................................................... 13

*United States v. Niebuhr,*
  456 F. App'x 36 (2d Cir. 2012) ........................................................... 19

*United States v. Onumonu,*
  967 F.2d 782 (2d Cir. 1992) .......................................................... passim

*United States v. Randell,*
  761 F.2d 122 (2d Cir. 1985) ................................................................. 4

*United States v. Romano,*
  794 F.3d 317 (2d Cir. 2015) ................................................................. 8

*United States v. Uddin,*
  551 F.3d 176 (2d Cir. 2009) ............................................................... 19

**Statutes**

18 U.S.C. § 3143(b) ............................................................... 1, 3, 4, 18

**Rules**

Fed. R. Civ. P. 803(6) ........................................................................ 17

Fed. R. Crim. P. 16(b)(1)(C) ................................................................ 5

Fed. R. Crim. P. 33 .............................................................................. 4

Fed. R. Evid. 401 .............................................................................. 12

Fed. R. Evid. 402 .............................................................................. 12

Fed. R. Evid. 403 .............................................................................. 11

Fed. R. Evid. 702 ........................................................................... 7, 8

Fed. R. Evid. 803 ................................................................... 15, 16, 18

## INTRODUCTION

On June 25, 2021, this Court sentenced defendant Michael Mendlowitz principally to a term of imprisonment of one year and one day.  Mr. Mendlowitz respectfully seeks an order granting him bail pending appeal, under 18 U.S.C. § 3143(b).  Because Mr. Mendlowitz is neither a flight risk nor a danger to the community, and because his appeal will raise substantial questions likely to result in a reversal, a new trial, or a shorter or non-custodial sentence, he meets the applicable standard.  When that standard is met, bail is mandatory.

The substantial questions justifying bail pending appeal include the exclusion at trial of expert testimony about standard practices in the credit card processing industry that the government claimed were criminal; the exclusion of evidence of Mr. Mendlowitz's good faith; the admission into evidence of an audit report constituting the only evidence at trial of systemic billing issues at Commerce Payment Systems ("CPS"), where Mr. Mendlowitz was CEO; and the loss calculation under the Federal sentencing guidelines.  The Court need not revisit or change its prior determinations on these issues to grant Mr. Mendlowitz's application for bail pending appeal.  The Court need only recognize that any of these issues presents a "substantial question"—meaning a close question that could be decided the other way—that would likely result in a reversal, new trial, or a shorter or non-custodial sentence if resolved in Mr. Mendlowitz's favor.

If Mr. Mendlowitz's appeal were unsuccessful, there is little doubt that, at 46 years old, he will be able to serve his full sentence after his appeal is decided.  Yet if he were denied bail pending appeal, he well may complete his prison sentence before his appeal is determined.[1]

---

[1] *See* Administrative Office of the U.S. Courts, *Judicial Business of the United States Courts*, tbl.B-4A (Sept. 2020) (noting that the median time from notice of appeal to final determination

Incarcerating Mr. Mendlowitz while his appeal is pending "could substantially diminish the benefit he would ordinarily receive from an appeal." *United States v. Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003). Given the clear and convincing evidence that Mr. Mendlowitz is neither a flight risk nor a danger to the community, and the substantial questions that, if decided in Mr. Mendlowitz's favor, are likely to result in a new trial or shorter or non-custodial sentence, Mr. Mendlowitz respectfully requests that this Court grant his motion for bail pending appeal.

## BACKGROUND

Mr. Mendlowitz was indicted on May 2, 2017 on one count of conspiracy to commit mail and wire fraud, one count of mail fraud, and one count of wire fraud. The original Indictment alleged that Mr. Mendlowitz made false statements and misrepresentations to customers and fraudulently overcharged customers for credit card processing services at CPS.[2] The government superseded the Indictment on March 27, 2019, approximately one month before trial.[3] The superseding Indictment added a charge of aggravated identity theft, removed the mail fraud charge, and stripped out most of the detail in the original Indictment.

In May 2019, following trial, the jury convicted Mr. Mendlowitz of the conspiracy charge and the wire-fraud charge and acquitted him of the aggravated identity theft charge.

In May 2021, the Court held a *Fatico* hearing on the issue of the loss amount under the Federal sentencing guidelines.

On June 25, 2021, the Court held a sentencing hearing. The Court adopted the government's calculation of loss under the sentencing guidelines and calculated Mr.

---

in criminal cases in the Second Circuit Court of Appeals is 15.6 months), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2020.pdf

[2] ECF No. 2.

[3] ECF No. 98.

Mendlowitz's guidelines range as 135-168 months.[4]  The Court sentenced Mr. Mendlowitz principally to a term of imprisonment of one year and one day, and two years of supervised release.  The Court also indicated that it would enter a forfeiture order for approximately $617,000.  At the hearing, Mr. Mendlowitz raised an application for bail pending appeal, and the parties agreed to submit briefing on that issue.

## ARGUMENT

A court "shall order" bail pending appeal if it finds (1) "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," and (2) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in … (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b).  When the requirements are met, "the statute establishes a right to liberty that is not simply discretionary but mandatory."  *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).

### I.  Mr. Mendlowitz is not likely to flee and poses no danger to the community.

As stated in the PSR, Mr. Mendlowitz "is not viewed as a flight risk or a danger to the community."[5]  He "has kept all court appearances and has been in compliance with all terms and conditions of his pretrial release."[6]  The Court adopted the factual findings in the PSR at the sentencing hearing.  Mr. Mendlowitz, with the Court's permission, has travelled within the U.S.

---

[4] As the transcript of the sentencing hearing is not yet available, we are providing a summary of the proceeding without citations to the transcript.

[5] PSR at 38.

[6] PSR at 38.

since his arrest without incident.  He has no criminal history prior to his conviction and has no

intention of working in the credit card processing business in the future.  The evidence that he is

neither a flight risk nor a danger to the community is "clear and convincing."  18 U.S.C. §

3143(b)(1)(A).  This requirement for bail pending appeal is easily satisfied.

## II. Mr. Mendlowitz's appeal raises substantial questions of law and fact likely to result in reversal, a new trial, or a non-custodial or shorter sentence.

To be "substantial" on a bail-pending-appeal application, a question need only be "one of

more substance than would be necessary to a finding that it was not frivolous"—in other words,

"a 'close' question or one that very well could be decided the other way," or one that is "novel,

which has not been decided by controlling precedent."  *United States v. Randell*, 761 F.2d 122,

125 (2d Cir. 1985).  A defendant need not prove that he is likely to succeed on the substantial

questions; it is sufficient that if he does succeed, reversal or a new trial is likely.  *Id.* at 124-25.

### A. The Court's exclusion of expert testimony raises a substantial question.

#### 1. Relevant Background

Before trial, the government moved *in limine* to exclude the testimony of Mr.

Mendlowitz's proposed expert, Patrick Moran.  Moran is a professional with over twenty years'

experience in the payment processing industry.[7]  Mr. Mendlowitz sought to call Moran as an

expert at trial on a variety of topics relating to standard industry practices in the payment

processing industry.[8]  Moran's testimony would have been offered to help the jury understand

critical issues in the case, given the complicated nature of payment processing services; to rebut

---

[7] Transcript of May 14, 2021 Fatico Hearing ("Fatico Tr.") 89:13-95:20 (Moran).

[8] *See* ECF No. 138-1 (copy of defendant's supplemental expert disclosure detailing the topics for Moran's testimony); *see also* Mem. of Law in Supp. of Def. Michael Mendlowitz's Mot. for a New Trial Under Fed. R. Crim. P. 33, dated July 8, 2019, at 3-5 (ECF No. 198) (the "New Trial Mot.").

evidence that certain practices were criminal in nature; and to support Mr. Mendlowitz's defense that he acted in good faith, as Moran's testimony would have corroborated Mr. Mendlowitz's understanding that he acted in accordance with accepted industry norms.

Following the final pre-trial conference at which the Court found the expert-exclusion motion premature, the parties exchanged letters about the topic, and the defense provided a supplemental expert disclosure under Federal Rule of Criminal Procedure 16(b)(1)(C) on April 16, 2019,[9] then sent another letter containing additional detail about Moran's testimony, on April 24, 2019, in response to questions from the government.[10]  The government renewed its effort to exclude Moran in a letter to the Court on May 3, 2019.[11]  On May 15, 2019 (after ten days of trial but with numerous government witnesses still to be called), the Court ruled that it would preclude Moran from testifying, finding that the subject matter of Moran's testimony would not be beyond the range of comprehension of the average juror and that his testimony could be obtained from the fact witnesses that had been or would be called.[12]

Though he was excluded from testifying at trial, Moran testified as an expert at the *Fatico* hearing in May 2021.  In testifying about his experience, Moran explained that over the years he had provided consulting and training to merchants about the terms of their processing arrangements, because "even though payment processing may seem simple, the merchant side of it is actually quite complex."[13]

---

[9] *See* ECF No. 138-1.

[10] ECF No. 138-3.

[11] *See* ECF No. 138.

[12] Trial Tr. 2262-64.

[13] Fatico Tr. at 93 (Moran).

Some of Moran's testimony at the *Fatico* hearing addressed issues about standard industry practices that were relevant to important issues at trial.  Moran testified that statement messages were an industry-standard means of communicating and imposing new or additional fees; he explained that "[i]t is common to notify a customer of either a new price or a change in price through a statement message [a]nd more or less everyone communicates that way."[14]  He also explained that "the standard in the industry is, you know, statement messages are used to modify the contract over time."[15]

As to various fixed fees that the government claims were fraudulent—like the $99 IRS fee—Moran explained that it was standard practice to notify merchants of fixed fees through statement messages and that, with respect to the IRS fee in particular, "basically the whole industry put in new monthly fees related to that issue."[16]  Moran also explained that the industry practice is that if a merchant continues to process after receiving a statement message, it means "they're in agreement with those new contract terms."[17]  And in the context of a processor (here, EVO) and its independent sales organizations (here, CPS), the processor (*i.e.*, EVO) would be responsible for the content and dissemination of statement messages.[18]

As to terms and conditions, Moran explained that there was no industry-standard manner for disseminating terms and conditions to merchants; some large institutions just provide a link

---

[14] Fatico Tr. 116:11-116:17 (Moran).

[15] Fatico Tr. 114:2-115:10, 116:11-116:17 (Moran).

[16] Fatico Tr. 114:24-115:10 (Moran).

[17] Fatico Tr. 117:15-117:23 (Moran).

[18] Fatico Tr. 119:7-119:12 (Moran).

requiring the merchant to "track[] down" the terms and conditions.[19]  Given the limited purpose

of the hearing, Moran did not address other aspects of the opinions that were excluded at trial.

### 2.  Argument

To be admissible under Federal Rule of Evidence 702, expert testimony must be relevant

and reliable, and the expert must be qualified.  *See* Fed. R. Evid. 702(a); *United States v.*

*Onumonu*, 967 F.2d 782, 786 (2d Cir. 1992).  Rule 702 incorporates the "liberal admissibility

standards of the federal rules," such that a court's "rejection of expert testimony is the exception

rather than the rule." *United States v. Morgan*, 53 F. Supp. 3d 732, 740 (S.D.N.Y. 2014)

(quoting the Advisory Committee Notes to Rule 702), *aff'd* 675 F. App'x 53 (2d Cir. 2017).  The

Second Circuit has reversed convictions where the district courts improperly excluded testimony

of the defendant's expert.  *See, e.g.*, *United States v. Litvak*, 808 F.3d 160, 182 (2d Cir. 2015);

*United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994); *Onumonu*, 967 F.2d at 788.  The Court's

exclusion of Moran's trial testimony about industry practices presents a "substantial question"

that, if resolved in Mr. Mendlowitz's favor, is likely to result in a reversal or new trial.

There was no dispute that Moran was qualified as an expert in the payment processing

industry, nor any dispute that his testimony was reliable.  In its ruling during trial, the Court did

not find Moran's testimony irrelevant.  Rather, the Court excluded Moran's testimony based on a

finding that the subject matter was not "beyond the[] range of comprehension" of ordinary

jurors.[20]  The Court found that "[l]aypersons generally do have knowledge concerning obtaining

---

[19] Fatico Tr. 144:5-144:17, 153:8-154:5 (Moran).

[20] Trial Tr. 2262-64.

and using credit cards, including the processing of the charges that are made."[21]  Whether this was an appropriate basis to exclude Moran's testimony presents a substantial question.

Courts regularly allow expert testimony on practices in complicated industries.  *See, e.g.*, *United States v. Romano*, 794 F.3d 317, 332 (2d Cir. 2015) (permitting expert testimony on practices in the "esoteric" rare-coin industry); *Litvak*, 808 F.3d at 182-85 (reversing decision to exclude expert evidence about practices in residential mortgage-backed securities trading industry).  And expert testimony on "general principles" in an industry is a "venerable practice," appropriate where, as here, the testimony is helpful to the jury and "fit[s]" the facts of the case. Advisory Committee Note to Rule 702.  While expert testimony may be unnecessary if it addresses matters that are "not beyond the ken of the average juror," *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994), this is not such a case.

The credit card processing industry is complex, with multiple different players involved in a single transaction, intricate pricing models, an array of fixed fees, and numerous different card types and transactions.  While it may seem simple to the end-user retail customer, the "merchant side of it is actually quite complex."[22]  As noted, Moran provides consulting services to merchants to advise them on their arrangements with credit-card processors, given the level of complexity.[23]  Even the government acknowledged the complexity at Mr. Mendlowitz's sentencing hearing, referring to the complicated nature of the credit card processing business and noting that credit card processing is very complicated.[24]  It is "likely that the average New York

---

[21] Trial Tr. 2263:15-17.

[22] Fatico Tr. at 93 (Moran).

[23] Fatico Tr. at 93 (Moran).

[24] Because the transcript of the sentencing hearing is not yet available, we have not provided exact quotations of the government's remarks.

juror knows little" about tiered or interchange pricing models, surcharging or downgrading and the corresponding disclosure associated with such fees, the standard for disclosure language typically used to convey pricing information to merchants, or the range of profits earned by processors.[25] *Onumonu*, 967 F.2d at 787-88 (rejecting argument that diamond smuggling was within the ken of an average juror). Whether Moran's testimony was properly excluded as falling within the "ken" of the average juror presents a substantial question.

The Court also rejected Moran's testimony as "something that could be obtained through the examination of fact witnesses that have been or will be called during the trial."[26] This basis for exclusion too presents a substantial question. The decision was made before the record was fully developed. No fact witness had the level of experience and knowledge about industry practices that Moran had. Witnesses lacked even knowledge or recollection about practices at EVO, let alone in the industry more broadly.[27] And while the Court predicted that witnesses yet-to-be-called could offer testimony on industry practices, none did. This was an error. *See Onumonu*, 967 F.2d at 786, 791 (reversing conviction where district court—in advance of hearing all fact witnesses—excluded defendant's expert on grounds that "you may be able to extract the information . . . from a number of witnesses").

Many important topics identified in the defense's supplemental expert notice went entirely unaddressed. No witnesses testified about the pricing models typically seen in the payment processing industry or that "it is common in the industry for initial rates to be set lower

---

[25] *See* ECF No. 138-1 (defendant's supplemental expert disclosure).

[26] Trial Tr. 2262.

[27] *E.g.*, Trial Tr. 2600:11-2600:17 (Lambrix did not know whether EVO was aware of "teaser" rates), 2626:19-2627:2 (Lambrix unable to recall whether CPS issued statement messages before charging PCI fees); *see* New Trial Mot. at 7-12 (describing other examples of witnesses lacking knowledge or recollection).

and increase over time."[28]  No witness testified about the industry standard for the "type of disclosure language typically used to convey pricing information" or that it is "industry standard to disclose rates and fees, especially surcharge rates, in 'fine print.'"[29]  No witness testified that it was "not industry practice for a payment processor to ensure that merchants actually read the terms and conditions" or whether "there are a variety of methods by which payment processors provide merchant customers with the terms and conditions."[30]  No witness testified that categories of fixed fees the government claimed were criminal "are commonly charged by payment processors."[31]  No witness testified about the "frequency of surcharges or downgrades" or the "industry standard disclosure to merchant-customers with respect to surcharging and downgrading."[32]  No witness testified about the practice of adding a markup to Visa and Mastercard fees or about industry practice for charging termination fees or liquidated damages (charges CPS did not assess).[33]  And no witness testified about the "[r]ange of profits for payment processors, including factors that could lead to higher or lower profits based on the type of merchants in the portfolio"[34] or that while that range varies, it is "typically between 50 and 500 basis points depending on the level of risk associated with the portfolio's merchants."[35]

In all events, requiring the defense to establish industry practices through cross-examination of adverse witnesses or other fact witnesses not aligned with the defense put the

---

[28] ECF No. 138-1 at 1-2 (defendant's supplemental expert disclosure).

[29] ECF No. 138-1 at 2.

[30] ECF No. 138-1 at 2.

[31] ECF No. 138-1 at 2.

[32] ECF No. 138-1 at 2.

[33] ECF No. 138-1 at 2-3.

[34] ECF No. 138-1 at 3.

[35] ECF No. 138-3 at 2.

defense in an untenable position, given the risk of an unfavorable or uninformed answer and the defense's inability to rebut such an answer with testimony from a recognized expert on the topic. *See Litvak*, 808 F.3d at 183-84 (exclusion of expert testimony put defense in "untenable position" where it left only "'victims' of his conduct as sources of potential testimony"). Moran's exclusion was especially prejudicial since the government relied on the testimony of its fact witnesses to argue that Mr. Mendlowitz "was not going along with others in the industry."[36]

To the extent the Court based its ruling on Federal Rule of Evidence 403, Rule 403 only permits exclusion of relevant evidence if its probative value is "substantially outweighed" by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  As the Second Circuit has held, given the "expertise and impartiality" of an expert in contrast to the "self-serving statements" of another witness, such expert testimony "could hardly be characterized as cumulative."  *Onumonu*, 967 F.2d at 787 (expert testimony was not cumulative of defendant's own testimony and not excludable under Rule 403).  Such is the case here, given Moran's "expertise and impartiality" versus the "self-serving statements" of government cooperators or EVO witnesses.  Meanwhile, any confusion about whether adherence to industry practices, by itself, was a defense could have been addressed with a jury instruction.  *See United States v. Abu-Jihaad*, 630 F.3d 102, 132-33 (2d Cir. 2010) (recognizing that the district court properly "minimized the risk of unfair prejudice through limiting instructions").

In ruling on Mr. Mendlowitz's motion for a new trial, the Court also found Moran's testimony irrelevant.  The Court did not state this ground for exclusion at trial.

---

[36] Trial Tr. 3238 (government's rebuttal summation).

Relevance is a "low threshold." *Litvak*, 808 F.3d at 190.  It means evidence that has "any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401.  Relevant evidence is ordinarily admissible.  Fed. R. Evid. 402. Moran's testimony about industry practices was relevant to the existence of a scheme to defraud and to Mr. Mendlowitz's state of mind and good faith.  The existence of a scheme to defraud is an element of the wire fraud charge, and a defendant's good faith operates as a complete defense. *See United States v. Dupre*, 462 F.3d 131, 139 (2d Cir. 2006).  The Second Circuit has long held that evidence bearing "even remotely" on a fraud-defendant's good faith ordinarily should be admitted.  *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) (evidence that other industry participants used the same fundraising strategy as defendants bore on good faith). Expert testimony about industry practices "may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice," *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991), and can bear on the defendant's good faith.  *See CFTC v. Wilson*, 13 Civ. 7884, 2016 WL 7229056, at *10 (S.D.N.Y. Sept. 30, 2016) (expert testimony about standard industry trading practices could allow jury to conclude that trader "did not intend its bids to be manipulative").

Moran would have testified (and, to an extent, did testify during the *Fatico* hearing) about common practices in the industry, including pricing models, standard discounts and ranges of profits, the use of statement messages, the lack of an industry standard for disseminating terms and conditions, and charging fixed fees.  Such testimony would have bolstered Mr. Mendlowitz's effort to introduce a reasonable doubt as to both the existence of a scheme to defraud and whether he had intent to defraud.  Mr. Mendlowitz's claim of an "honest belief that his conduct was not improper or unlawful" is one "the jury may [find] more plausible in light of" the

excluded evidence.  *Litvak*, 808 F.3d at 190.  That belief—evidenced by, for example, Mr.

Mendlowitz's comment to David Devers that "[y]ou have to do a statement notification.  You

can't just raise [a fee]"[37]—is one the jury may have found "more plausible" in light of Moran's

testimony about the common understanding of the implications of statement messages in

evidencing a customer's agreement to new or changed fees.  Second Circuit decisions reversing

convictions where the district courts excluded expert testimony relevant to good faith

demonstrate the "substantial" nature of this issue.  *See, e.g.*, *Diallo*, 40 F.3d at 34; *Onumonu*, 967

F.2d at 788.

In deeming Moran's testimony irrelevant, the Court relied on the Second Circuit's

summary order in *United States v. Newkirk*, 684 F. App'x 95 (2d Cir. 2016).[38]  The court in

*Newkirk* upheld the exclusion of expert testimony about "customary industry practices *in the*

*absence of*" the alleged misrepresentations at issue.  *Id.* at 97 (emphasis added).  But this case is

different.  Moran's testimony—on issues such as terms and conditions and fixed fees—addresses

practices that the government contended were themselves part of the scheme.  Expert testimony

about industry-standard practice on those issues would have borne on the existence of a scheme

to defraud and on Mr. Mendlowitz's good-faith defense that he understood CPS to be following

those industry-standard practices.  Certainly such testimony bears "even remotely" on Mr.

Mendlowitz's good faith, *Brandt*, 196 F.2d at 657, such that the Court's exclusion of it presents a

substantial question for purposes of this bail-pending-appeal application.

An appellate ruling that the exclusion of Moran's testimony was an error is likely to

result in a reversal or new trial.  Moran's testimony would have been relevant to the existence of

---

[37] DX 5326/5326T.

[38] Opinion & Order, dated Dec. 20, 2019, at 12 (ECF No. 230).

a scheme and Mr. Mendlowitz's claim of good faith.  The testimony went to rebut the "core of the prosecution's case," and its exclusion was significant.  *Litvak*, 808 F.3d at 184 (exclusion of expert testimony was not harmless) (quoting *United States v. Blum*, 62 F.3d 63, 69 (2d Cir. 1995)).  Given the primacy to Mr. Mendlowitz's defense of evidence of good faith, the low bar for relevance, and the cases from the Second Circuit reversing convictions where expert evidence was improperly excluded, *e.g.*, *Litvak*, 808 F.3d at 184-85; *Diallo*, 40 F.3d at 34; *Onumonu*, 967 F.2d at 788, the Court's exclusion of Moran's testimony presents a substantial issue that, if decided in Mr. Mendlowitz's favor, is likely to result in a reversal or new trial.

### B.  Other evidentiary rulings present substantial questions.

At least two other evidentiary rulings present substantial questions likely to result in a reversal or new trial:  the exclusion of a recorded conversation in which Mr. Mendlowitz comments about having merchants initial the terms and conditions; and the admission of an audit report prepared by EVO.

#### 1.  Exclusion of Mr. Mendlowitz's statement relevant to the auto-population feature presents a substantial issue.

A key theme in the government's case was that Mr. Mendlowitz sought to conceal the three pages of terms and conditions from merchants.  In its opening, in examining cooperating witnesses, and in its summation, the government focused on a feature implemented at CPS that caused merchants' initials to auto-populate on each page of the application, including the terms and conditions.[39]  The government called this a "high-tech way to hide" those terms and

---

[39] *See* New Trial Mot. at 13-16 (detailing the background on this issue).

conditions and argued to the jury that it showed Mr. Mendlowitz's "true intent" in the "ongoing fraud scheme."[40]

The defense sought to rebut this claim with a recorded conversation indicating that Mr. Mendlowitz was not concerned with providing terms and conditions to merchants.  In that recording, cooperating witness David Devers asks Mr. Mendlowitz whether, rather than auto-populating the initials, CPS can "make it go one by one."[41]  Mr. Mendlowitz responds, "We could.  You know, it would be a little bit more intrusive."[42]  Mr. Mendlowitz's response—reflecting his willingness to consider having merchants initial each page—is inconsistent with an intent to conceal the terms and conditions from CPS's merchants and, more generally, inconsistent with criminal intent.

As an evidentiary matter (and as explained in detail in Mr. Mendlowitz's motion for a new trial), the statement was admissible as either non-hearsay circumstantial evidence of Mr. Mendlowitz's state of mind or under the hearsay exception in Federal Rule of Evidence 803(3) for statements of the declarant's "then-existing state of mind."[43]  Fed. R. Evid. 803(3).  While the Court excluded the statement at trial and rejected Mr. Mendlowitz's arguments about the statement in denying his motion for a new trial, we submit that the admissibility of the statement presents a substantial question likely to result in a new trial if resolved in Mr. Mendlowitz's favor.

---

[40] Trial Tr. 86:10-87:5 (government's opening); 3108:23-3109:1, 3137:12-3134:13 (government's closing).

[41] DX 5322/5322T.

[42] DX 5322/5322T.

[43] New Trial Mot. at 16-19.

The statement, on its face, is not about a past event and was not offered to prove a fact remembered or believed. The statement was a reaction to Devers's proposal and was offered to demonstrate that, in Mr. Mendlowitz's mind, having merchants initial each page of the application and the terms and conditions was worth considering—a state of mind that rebuts the government's claim that Mr. Mendlowitz used the auto-population function to conceal the terms and conditions. The statement's admissibility as either non-hearsay circumstantial evidence of Mr. Mendlowitz's state of mind or as a statement of then-existing state of mind under Rule 803(3) presents a substantial question. If resolved in Mr. Mendlowitz's favor, a new trial would be likely. The statement was offered to support Mr. Mendlowitz's good faith—a complete defense to the charges. *United States v. Dupre*, 462 F.3d 131, 139 (2d Cir. 2006). And it was offered to rebut a claim about the auto-population function that featured prominently in the government's opening statement, closing argument, and in its questioning of witnesses at trial. Because this evidence was excluded, a significant piece of Mr. Mendlowitz's good-faith defense was not presented to the jury. *See United States v. Certified Env. Servs., Inc.*, 753 F.3d 72, 96 (2d Cir. 2014) (improper exclusion of good-faith evidence warranted new trial where it deprived jury of "vital context and corroboration for the defendants' defense of good faith and lack of criminal intent").

### 2. Admission of the EVO audit report presents a substantial question.

Over the defense's objection, the Court admitted an audit report about CPS prepared by EVO, as a business record under Rule 803(6).[44] The audit report, in its narrative section, contains negative information about CPS, including that CPS was "underperforming" in terms of

---

[44] *See* New Trial Mot. at 20-22 (describing the procedural history around admission of the audit report).

billing its customers for their contractual pricing and that EVO was "unable to reconcile" billing statements with underlying contracts.[45]  The audit report was the only evidence that allowed the jury to conclude that there was a systematic billing issue at CPS.[46]  The government asked a witness, Lyndsay LaSpina, to read a narrative statement from the report that "Evo was unable to reconcile the statements using the information provided on the merchant contract,"[47] and also elicited testimony from LaSpina that the audit report identified "billing issues," meaning "[w]hat the merchant was being billed did not correlate to what the merchant was signing for."[48]

While the Court rejected Mr. Mendlowitz's arguments as to why the audit report did not qualify as a business record under Rule 803(6), we submit that its admissibility presents a substantial question.  Because the audit report was the product of a new process at EVO, undertaken by employees without experience, and prompted (and accelerated) because of pricing concerns that senior EVO employees had identified in the months before the audit,[49] it is at least a close question whether the audit report was "kept in the course of a regularly conducted activity."  Fed. R. Civ. P. 803(6); *see Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (audit report found inadmissible where there was no regular compliance audit procedure, audits were conducted irregularly, and only when there was a suspicion of a deficiency).  And given the audit's small sample size, lack of evidence that the sample was representative, and witness testimony that an employee involved in the audit "did not do a very

---

[45] GX 1005 at 70611-70612.

[46] New Trial Mot. at 28.

[47] Trial Tr. 2427:2-2427:15 (LaSpina) (questioning about GX 1005).

[48] Trial Tr. 2429:24-2430:8 (LaSpina).

[49] *See* New Trial Mot. at 20-25 (describing issues in detail).

good job,"[50] it similarly is a close question whether the audit report is inadmissible because the "source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6)(E).

And if resolved in Mr. Mendlowitz's favor, the likely result would be a new trial.  The audit report was the only proof at trial of systemic billing issues, and the government relied on it as evidence that billing issues were the product of intentional fraud, rather than mistakes or sales misconduct (which Mr. Mendlowitz sought to reign in[51]).  The audit report—prepared by CPS's parent company—was evidence of a different character than the testimony of cooperating witnesses from CPS who claimed that billing issues were common.  This issue warrants bail pending appeal.

### C.  The loss calculation presents a substantial question.

Bearing in mind that the sentence the Court imposed of one year and one day is far below the guidelines range attributable to the loss calculation the Court adopted, we respectfully submit that the loss calculation presents a substantial question for this bail-pending-appeal application.  Bail pending appeal is warranted where there is a "substantial question" likely to result in a "sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(iii)-(iv).

At the sentencing hearing, the Court adopted the government's $23 million loss figure, which was based on the government's claim that the fair market value of CPS's services was 3%

---

[50] New Trial Mot. at 25-27 (quoting testimony of Kevin Lambrix about Wendy Ulloa).

[51] *See, e.g.*, DX 5005 (email from Mr. Mendlowitz to the company's vendor about making the merchant application "un-editable" because "I have spoken to these reps dozens of times, but until I make it impossible for them to get away with this [changing fees on the merchant application], it'll keep happening").

of its processing volume, with amounts above 3% representing fraud loss.  The Court also found the government's alternative loss calculation—based on an estimate of certain fixed fees charged to merchants—to provide a reasonable estimate of the loss.

The loss calculation presents a "substantial question."  The government bears the burden of proving a "reasonable estimate" of the loss by a preponderance of the evidence.  *See United States v. Niebuhr*, 456 F. App'x 36, 39 (2d Cir. 2012); *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009).  The government offered a loss calculation based on a "fair market value" for CPS's services, but the only witness the government called to prove fair market value disclaimed any view on that subject.[52]  The government also offered an alternative loss calculation based on CPS's charging of certain fixed fees, which were disclosed in advance through statement messages.[53]  Whether the government met its burden as to either of these calculations presents a substantial question.

---

[52] Fatico Tr. 33:16-35:8 (Hodges); *see also* Def. Michael Mendlowitz's Post-*Fatico* Hearing Mem. of Law, dated June 4, 2021, at 16-21 (ECF No. 296) ("Def.'s Post-*Fatico* Mem.").

[53] Def.'s Post-*Fatico* Mem. at 21-25.

**CONCLUSION**

The Court should grant Mr. Mendlowitz's motion for bail pending appeal.

Dated:  June 30, 2021                                      SMITH VILLAZOR LLP

                                                    *s/ Patrick J. Smith*
                                                    SMITH VILLAZOR LLP
                                                    Patrick J. Smith
                                                    Rodney Villazor
                                                    Brian T. Burns
                                                    250 West 55th Street, 30th Floor
                                                    New York, New York  10019
                                                    TEL:  (212) 582-4400
                                                    FAX:  (347) 338-2532
                                                    patrick.smith@smithvillazor.com
                                                    rodney.villazor@smithvillazor.com
                                                    brian.burns@smithvillazor.com

                                                    *Attorneys for Defendant Michael Mendlowitz*