```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:  10/20/2021          │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :        S2 17 Cr. 248 (VSB)
                                                        :
                - against -                             :        **OPINION & ORDER**
                                                        :
                                                        :
MICHAEL MENDLOWITZ,                                     :
      a/k/a "Moshe Mendlowitz,"                         :
                                                        :
                                Defendant.              :
                                                        :
-------------------------------------------------------------------- X

VERNON S. BRODERICK, United States District Judge:

        Before me is the motion of Defendant Michael Mendlowitz ("Defendant" or

"Mendlowitz") for bail pending appeal.  Specifically, Mendlowitz seeks bail pending appeal

arguing that (1) he does not pose a risk of flight or a danger to the community; and (2) his appeal

raises substantial questions of law and fact which would likely result in reversal, a new trial, or a

shorter sentence.  Because I find that Defendant's arguments do not raise substantial questions of

law and fact that would result in reversal, a new trial, or a shorter sentence, Defendant's motion

for bail pending appeal is DENIED.

**I.    Background and Procedural History**[1]

        **A.  *Motion to Preclude Expert Testimony***

        On April 1, 2019, Mendlowitz and the Government each filed motions in limine and

supporting documents.  (Docs. 103–05, 106.)  One of those motions was a motion to preclude the

---

[1] I assume familiarity with the factual background and procedural history set forth in my Opinion & Order denying
Defendant's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  (Doc. 230.)
Therefore, I recount only the facts that are pertinent to the instant Opinion & Order, and I do not attempt to
summarize the extensive factual background related to the substance or procedural history of this case.

expert testimony of Kevin Moran regarding general practices in the payment processing industry. Specifically, the Government moved in limine to preclude Moran's testimony, arguing:  (1) that testimony about general industry practice was irrelevant; (2) that Moran's prospective testimony concerning the roles or conduct of EVO Payments, Inc. ("EVO") and Commerce Payment Systems ("CPS") was improper and would inappropriately invade the province of the jury; (3) that the topics identified by Defendant in his expert notice and supplementations to that notice did not require specialized knowledge and could be explained by the fact witnesses who were scheduled to testify at trial; and (4) that the expert notice and supplementations to that notice provided by the defense did not adequately identify the opinions to be offered by Moran, nor the bases or reasons for those opinions.  (Doc. 106, at 21.)[2]  In opposition, Mendlowitz stated his intention to elicit testimony from Moran "about standard practices in the payment-processing industry and how CPS's and [EVO's] practices fit within those standard practices."  (Doc. 114, at 10.)  Mendlowitz argued that (1) Moran's proposed testimony on general industry practices was relevant to Mendlowitz's state of mind; (2) Moran's proposed testimony about practices at CPS and EVO would not usurp the role of the jury and would concern matters beyond the range of comprehension of the average juror; and (3) the defense's expert notice and the supplementations provided to the Government were adequate under the Federal Rules of Criminal Procedure.  (*Id*.)  After reviewing the papers submitted by the parties, I held oral argument on April 15, 2019.  At the beginning of oral argument, I notified the parties that

> . . . it's premature to give a ruling without having heard, first of all, what testimony comes in through the witnesses that are going to take the stand concerning what is done.  Presumably there are going to be witnesses who will have experience in the industry, who could testify about industry practice and the like.  The testimony, I think, has an aspect to it that is opinion, but has an aspect to it that is just factual.

---

[2] Page numbers included in citations to documents refer to the ECF header stamp page numbers, unless otherwise stated.

2

So I think it's premature for me to make a ruling right now that the expert's testimony would be relevant.

(Oral Arg. Tr. 44:8–17.)[3]  During oral argument, Mendlowitz confirmed that Moran's expected testimony would include testimony about general industry practice in the payment processing industry, including—based upon Moran's experience—"how do payment processors do things." (*Id*. at 43:2–3.)  However, Mendlowitz clarified that Moran would not provide testimony concerning (1) how the practices of EVO and CPS compared to general industry practices, (*id*. at 42:8–15, 44:18–23); (2) "whether something is fraudulent or misleading or not fraudulent or misleading," (*id*. at 45:1–3); or (3) whether the fees and prices charged by CPS were consistent with the fees and charges within the industry, (*id*. at 45:3-10); instead, Moran would describe where within the payment processing industry entities like EVO and CPS fit, (*see generally id*. at 42–45) (stating testimony would address matters including "where does EVO, the parent company, fit in" and "what is CPS's role in the ecosystem").  The Government conceded that some testimony about terminology used in the industry, generally about payment card processors, and "what CPS did as a sort of middleman" would be relevant, but argued that such testimony could come from lay witnesses and did not require an expert.  (*Id*. at 47–48.)  The Government also argued that general practices in the payment processing industry would not be relevant, "because the question before the jury is going to be, what did the defendant do here, what were the practices of this company, [and] what does the defendant believe about the practices of the company."  (*Id*. at 48:22–25.)  Finally, the Government asserted that even if testimony about general practices in the industry was relevant, there was a likelihood of jury confusion that the standard against which Defendant's conduct was to be measured was industry

---

[3] "Oral Arg. Tr." refers to the April 15, 2019 motion in limine oral argument transcript.  (Doc. 126.)

3

practice rather than whether his conduct violated the wire fraud statute.  (*Id*. at 49:16–50:3.)

On May 15, 2019—after the jury had heard the testimony of former CPS employees Guy

Samuel, Mendy Greenblatt, David Devers, and Bienvenido Caban—I issued an oral ruling

granting the Government's motion to preclude the expert testimony of Patrick Moran.

Specifically, I stated that

> . . . before me is the motion of the government to preclude the testimony of Patrick
> Moran, the witness that defendant Mendlowitz intends to call as an expert to testify
> 'about the standard practices in the payment processing industry and how CPS and
> EVO Payments' practice fit within those standard practices.'  The government
> initially moved in limine to preclude the testimony of Mr. Moran. . . . Because I
> find under the facts and circumstances of this case that Mr. Moran's testimony will
> not provide the jury with information that is beyond their range of comprehension
> and that the proffered testimony is something that could be obtained through the
> examination of fact witnesses that have been or will be called during the trial, that
> a reasonable jury would be able to understand them without the aid of someone
> with specialized expertise, I am going exercise my discretion to preclude the
> testimony of Mr. Moran.  Here, the majority of witnesses who have testified and
> will testify have knowledge not only about the practices of CPS and EVO, but many
> of the witnesses also have knowledge about standard practices in the payment
> processing industry since they were employed at other payment processors in
> various positions or, in the case of EVO witnesses, partnered with other entities like
> CPS that provide processing services.  Unlike the proffered experts in *Newkirk* and
> *Collins*, who were going to provide testimony concerning the mechanics of mergers
> and acquisitions, the role of transactional lawyers, and the meaning of the terms
> such as 'restricted stock pledge agreement' and 'priority security interest,' and
> regarding materiality of certain types of documents in a leveraged buyout and
> generally about the work of transactional lawyers, areas that jurors would have little
> experience unless they were transactional attorneys.  Laypersons generally do have
> knowledge concerning obtaining and using credit cards, including the processing
> of the charges that are made.   I also note that, with regard to defendant
> Mendlowitz's state of mind during the relevant time period, contemporaneous
> documents and statements, some of which were authored by and/or made by
> defendant, have been admitted in evidence and been the subject of testimony on
> both direct examination and cross-examination.  Since there are witnesses yet to be
> called who had direct contact with and communication in realtime with defendant,
> I expect there will be additional evidence related to the defendant's state of mind
> or from which his state of mind can be inferred that can be presented to the jury.  I
> also note that with regard to the proffered testimony concerning how CPS's and
> EVO Payments' practices fit within the standard practices of payment processing
> industry, that Mr. Moran is not relying on any CPS or EVO documents to form his
> opinions and therefore would not be able to testify concerning the specific practices

of CPS and EVO compared with the standard industry practices.  Since I base my decision to preclude the testimony of Mr. Moran on the basis that it would not provide the jury with information that is beyond their range of comprehension, and that it would not be testimony that could be obtained and has been obtained through various fact witnesses, I need not reach the government's arguments related to inadequacy of the expert notice and disclosure.

(Tr. 2262–64.)[4]

### B. *Trial*

Trial commenced on April 29, 2019, with jury selection, and concluded on May 23, 2019, with the verdict.  The jury found Defendant Mendlowitz guilty on Counts One and Two—conspiracy to commit wire fraud, and wire fraud—and acquitted him on Count Three—aggravated identity theft.  (Doc. 153.)

### C. *Post-Trial Proceedings*

On July 8, 2019, Mendlowitz filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  (Docs. 197–98).  The Government filed its opposition on July 29, 2019, (Doc. 202), and briefing was complete when Medlowitz filed his reply on August 12, 2019, (Doc. 208).  Specifically, Mendlowitz claimed he was entitled to a new trial because I: (1) erroneously excluded the expert testimony of Kevin Moran concerning general industry practices in the payment processing industry; (2) erroneously excluded portions of recorded conversations that purportedly related to his state of mind; (3) erroneously admitted in evidence an audit report prepared by EVO Payments, Inc.; (4) unfairly limited the cross-examination of Kevin Lambrix, EVO's Chief Operating Officer during the relevant time period; and (5) erroneously instructed the jury on conscious avoidance.  (*See generally* Doc. 198.)  In opposition, the Government argued that it was "well within [my] discretion to admit or preclude

---

[4] "Tr." refers to the trial transcript in this matter.  Continuously paginated transcripts of each day of trial are docketed on ECF as Documents 158, 160, 162, 164, 166, 168, 170, 172, 174, 176, 178, 180, 182, 185, 187, and 189. Citations to page numbers from the trial transcript do not refer to the ECF header stamp page numbers.

the challenged evidence and [that I] correctly gave a jury instruction on conscious avoidance." (Doc. 202, at 4.)  In my Opinion & Order filed on December 20, 2019 ("12-20 Opinion & Order" or "12-20 O&O"), I found that (1) Moran's proffered expert testimony and the portions of the recorded conversations were appropriately excluded; (2) the audit report was correctly admitted as a business record; (3) the cross-examination of Lambrix was not improperly limited; and (4) the conscious avoidance jury instruction was proper under the facts presented to the jury.  (*See generally* 12-20 O&O, Doc. 230.)

## D.  *Sentencing and Motion for Bail Pending Appeal* [5]

The parties appeared before me for sentencing on December 10, 2019.  After hearing from the parties concerning, among other things, calculation of loss amount, I decided that it was appropriate to have a *Fatico* hearing.  A *Fatico* hearing was held on May 14, 2021.  At that hearing two witnesses testified:  Kevin Hodges (a former chief financial officer at EVO) for the Government, and Patrick Moran (an expert witness in the payments processing industry) for Defendant Mendlowitz.

Sentencing was held on June 25, 2021.  During the sentencing hearing I issued an oral ruling related to the *Fatico* hearing.  Specifically, I found that a loss amount of approximately $23,232,880 to be a reasonable estimate of the loss—this finding was consistent with the amount of the loss calculated in the Presentence Investigation Report (Doc. 214 ("PSR")).  Mendlowitz's guidelines range was 135 to 168 months' imprisonment.  (PSR ¶ 137.)  After considering the guidelines range, the submissions and arguments of the parties, and the factors set forth in 18 U.S.C. § 3553(a), I granted Mendlowitz a substantial variance and sentenced him to a year and a

---

[5] The facts pertinent to each of the asserted bases for a new trial are discussed below in the sections addressing each such claim.

day.  (Doc. 315.)

After I sentenced Mendlowitz, his counsel made an oral application for bail pending appeal.  (Doc. 310, at 72-74.)  The parties agreed to brief the issue, and I set a briefing schedule. On June 30, 2021, Mendlowitz filed his motion for bail pending appeal, (Doc. 304), and the Government filed its opposition on July 7, 2021, (Doc. 306).  Mendlowitz argues that "[b]ecause [he] is neither a flight risk nor a danger to the community, and because his appeal will raise substantial questions likely to result in a reversal, a new trial, or a shorter or non-custodial sentence, he meets the applicable standard."  (Doc. 304, at 5.)  Mendlowitz claims that the substantial questions include:  (1) my exclusion of Moran's expert testimony "about standard practices in the credit card processing industry;" (2) the exclusion of a statement that purportedly demonstrated Mendlowitz's good faith; (3) my admission in evidence of a CPS audit report; and (4) my loss calculation under the sentencing guidelines.  (*Id*.)  With the exception of the loss calculation issue, I considered the merits of the arguments about which Mendlowitz claims there are substantial issues that entitle him to bail pending appeal when I considered and rejected his motion for a new trial.  (*See generally* Doc. 230.)  I consider each of Defendant's arguments below in turn.

## II.    <u>Legal Standard</u>

A defendant who has been sentenced to a term of imprisonment must be detained pending appeal unless a court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community, that the appeal is not for the purpose of delay, and that the appeal "raises a substantial question of law or fact likely to result in reversal, an order for a new trial," or a reduced sentence.  18 U.S.C. § 3143(b)(1)(A)–(B).

Courts considering a motion for bail pending appeal must use a two-step analysis to

determine whether such relief is warranted.  *See United States v. Randell*, 761 F.2d 122, 124–25 (2d Cir. 1985).  First, the Court must determine whether a defendant's appeal raises a "substantial question of law or fact."  *Id*.  A "substantial" question is "a 'close' question or one that very well could be decided the other way," that is, a question "of more substance than would be necessary to a finding that it [is] not frivolous."  *Id*. at 125 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).  Second, the Court must determine whether the "substantial question" is "so integral to the merits of the conviction on which [the] defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."  *Id*. (quoting *United States v. Miller*, 753 F.2d 19, 23–24 (3d Cir. 1985)).  In addition, with regard to the second step, a defendant must show that the question, if resolved in his favor, would result in reversal "on all of the counts" for which he has been sentenced to a term of imprisonment.  *Id*.  As to both steps, "the burden of persuasion rests on the defendant."  *Id*.

## III.   Discussion

The Government fails to address, let alone dispute, Mendlowitz's claim that he is not likely to flee and does not pose a danger to the community.  The Government has arguably waived their right to challenge Mendlowitz's argument that he is not flight risk or a danger to the community.  *See United States v. Canady*, 126 F.3d 352, 359 (2d Cir. 1997) ("[T]he government did not raise this procedural default argument in the district court and therefore, the government has waived the defense."); *United States v. Spaulding*, 16-CR-851 (VSB), 2020 WL 5089441, at *3 (S.D.N.Y. Aug. 27, 2020); *United States v. Hunt*, 440 F. Supp. 3d 221, 224 (W.D.N.Y. 2020) (government's "failure to raise that argument" before magistrate judge resulted in waiver).  Even if the Government's failure to address the issue of flight and danger do not amount to a waiver, I find that under the circumstances presented here,

Mendlowitz is not a risk of flight or a danger to the community.

Therefore, I find by clear and convincing evidence that Mendlowitz is not likely to flee or pose a danger to the community.

With regard to the substantial questions that Mendlowitz has identified as likely to result in a reversal, a new trial, or a shorter or non-custodial sentence, I addressed three of these issues during trial, and—as the Government notes—each of the issues were raised by Mendlowitz and addressed in my 12-20 Opinion & Order denying Mendlowitz's post-trial motion for a new trial. Without identifying any new or material reasons, Mendlowitz essentially raises the same arguments I addressed and rejected in ruling on his post-trial motion for a new trial.  As discussed below with regard to each of the issues raised by Mendlowitz in his current motion, I do not find these evidentiary rulings to be close questions for appeal purposes, and I see no need to revisit my 12-20 Opinion & Order.  Therefore, Mendlowitz's motion for bail pending appeal is DENIED.

## A.  *The Expert Testimony of Kevin Moran was Properly Excluded*

Defendant argues that Moran's proposed testimony "would have been offered to help the jury understand critical issues in the case, given the complicated nature of payment processing services; to rebut evidence that certain practices were criminal in nature; and to support Mr. Mendlowitz's defense that he acted in good faith, as Moran's testimony would have corroborated Mr. Mendlowitz's understanding that he acted in accordance with accepted industry norms." (Def. Mem. 8–9.)[6]  In opposition, the Government argues that Moran's testimony was properly excluded for the reasons I articulated in my Opinion & Order denying Mendlowitz's motion for a

---

[6] "Def. Mem." refers to Defendant Michael Mendlowitz's Memorandum of Law in Support of Motion for Bail Pending Appeal.  (Doc. 304.)

new trial.  (Govt. Opp. 2-3.)[7]

## 1.  Applicable Law

Federal Rule of Evidence 702 permits the admission of expert testimony as long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a)," and "the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."  Fed. R. Evid. 702 advisory committee's notes (2000) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).

"The law assigns district courts a gatekeeping role in ensuring that expert testimony satisfies the requirements of Rule 702.  The inquiry is a flexible one, and district courts enjoy considerable discretion in deciding on the admissibility of expert testimony."  *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011) (internal quotation marks omitted).  As part of its gatekeeping role, a court must ensure the "reliability and relevancy of expert testimony" presented to a jury.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Consistent with Rule 702, expert testimony is admissible when it "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); *see also*, *e.g.*, *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993).

The party seeking admission of expert testimony is required to demonstrate that such testimony is based on the witness's specialized knowledge.  *See United States v. Mejia*, 545 F.3d

---

[7] "Govt. Opp." refers to the Governments July 7, 2021 letter submitted in opposition to in opposition Mendlowitz's motion for bail pending appeal.  (Doc. 306.)

179, 196 (2d Cir. 2008) (district court erred in allowing expert testimony "about matters that required no specialized knowledge"). Expert testimony that addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help" is inadmissible. *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). Expert testimony should be limited to situations where the subject matter is beyond the knowledge of the average juror. *See Locascio*, 6 F.3d at 936–37; *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991).

Even when an expert's proposed testimony is found to be relevant, "Rule 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (internal quotation marks omitted). Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," a "judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id.* (internal quotation marks omitted).

The Second Circuit reviews a district court's decision admitting or excluding expert testimony under Rule 702 for abuse of discretion. *See Kumho Tire Co.*, 526 U.S. at 152. A decision to admit or exclude scientific evidence is not an abuse of discretion unless it is manifestly erroneous. *See United States v. Salameh*, 152 F.3d 88, 129 (2d Cir. 1998).

## 2.   Application

As an initial matter, as noted, Mendlowitz's motion for bail pending appeal essentially rehashes the arguments he made with regard to Moran's expert testimony in connection with his motion for a new trial, and I do not find this evidentiary ruling to be a close question for appeal purposes. Therefore, for the reasons stated in my 12-20 Opinion & Order and those discussed

below, I find that the exclusion of Moran's testimony does not raise a substantial question likely

to result in a reversal, a new trial, or a shorter or non-custodial sentence.  (*See* 12-20 O&O 11-

18.)

In addition, Mendlowitz now asserts that I "did not find Moran's testimony irrelevant"

when I excluded the testimony during trial.  (Def. Mem. 11.)  That is not accurate.  In excluding

Moran's testimony, I held, among other things, that

> [b]ecause I find under the facts and circumstances of this case that Mr. Moran's
> testimony will not provide the jury with information that is beyond their range of
> comprehension and that the proffered testimony is something that could be obtained
> through the examination of fact witnesses that have been or will be called during
> the trial, that a reasonable jury would be able to understand them without the aid of
> someone with specialized expertise, I am going exercise my discretion to preclude
> the testimony of Mr. Moran.

(Tr. 2262.)  I also stated "that with regard to the proffered testimony concerning how CPS's and

EVO Payments' practices fit within the standard practices of payment processing industry, that

Mr. Moran is not relying on any CPS or EVO documents to form his opinions and therefore

would not be able to testify concerning the specific practices of CPS and EVO compared with

the standard industry practices."  (*Id.* at 2264.)  These comments relate to the relevance of

Moran's proposed testimony.  Although "the decision of whether to admit or exclude expert

testimony is left to the sound discretion of the district court," "expert testimony that seeks to

address 'lay matters which [the] jury is capable of understanding and deciding without the

expert's help' is not relevant and is therefore inadmissible."  *United States v. Jiau*, 734 F.3d 147,

154 (2d Cir. 2013) (quoting *Andrews*, 882 F.2d at 708).  Regardless of whether Moran's

testimony was excluded for lacking relevancy, or because it was justified under "Rule 403,"

*Daubert*, 509 U.S. at 595, or for some other reason, the Second Circuit "may affirm

on any basis evident from the record," *Collins v. W. Hartford Police Dep't*, 324 F. App'x 137,

138 (2d Cir. 2009) (citation omitted).  Therefore, Mendlowitz has failed to persuade me that the record is without grounds to affirm my decision to exclude Moran's testimony, much less that his appeal "raises a substantial question of law or fact likely to result in reversal." *Randell*, 761 F.2d at 126.

Mendlowitz suggests that my decision excluding Moran's testimony was premature, and cites to *United States v. Onumonu*, 967 F.2d 782 (2d Cir. 1992), to argue that at the time of my decision fact witnesses remained to be called.  Mendlowitz's reliance on *Onumonu* is misplaced. *Onumonu* was a heroin smuggling case in which a defendant was arrested at an airport after arriving on a flight from Nigeria.  967 F.2d at 784.  The defendant had swallowed condoms with small containers in them that in turn contained heroin.  *Id.* at 785.  The expert in *Onumonu* was excluded after the Government's direct examination of its first witness, and the expert's testimony—about the prevalence of diamond smuggling from Nigeria—was directly tied to the defendant's post arrest statement that an acquaintance offered him $5,000 to swallow condoms the acquaintance said contained diamonds; his defense was thus premised on "the reasonableness of [the defendant]'s belief that he had swallowed diamonds, not heroin."  *Id.* at 785.  Notably, the Second Circuit affirmed that "[t]he district judge has discretion to exclude relevant expert testimony" under "[R]ule 403," but that the judge had not done so.  *Id.* at 787.  In contrast, here, I issued my decision excluding Moran's testimony on the tenth day of trial after the testimony of former CPS employees Guy Samuel, Mendy Greenblatt, David Devers, and Bienvenido Caban, which touched on matters including specific practices within CPS.[8]  Moreover, Moran's

---

[8] As noted in my 12-20 Opinion & Order, I described some of the testimony that each of these former CPS employees—many of whom had worked for other credit card processors—had given concerning industry practices and practices at CPS, including (1) the work credit card processors like CPS did; (2) rates charged for different types of transactions; (3) the merchant application sent to customers and information that was typically included in such applications; (4) the sales, underwriting, and boarding process for new customers; (5) the various types of fees and

proffered testimony concerned standard industry practices, not the practices at CPS. It thus has little-to-no bearing on what went on at CPS, and as such, it has little-to-no bearing on the plausibility of any subjective belief Mendlowitz may have had. Moreover, unlike the trial court in *Onumonu*, I expressly found that a lay jury would not be aided by expert testimony given the lay testimony of the witnesses "who ha[d] been or w[ould] be called during the trial," (*see* Tr. 2262), which is a Rule 403 determination that falls within my discretion. *See Daubert*, 509 U.S. at 595.

Mendlowitz also argues that "[m]any important topics identified in the defense's supplemental expert notice went entirely unaddressed." (Def. Mem. 9.) He then lists the purported industry standards outlined in the supplemental expert notice about which "[n]o witness testified." (*Id.*) This argument misses the mark, because, once again, Mendlowitz fails to relate Moran's excluded testimony to anything actually at issue in this case. Again, what matters here is what was done at CPS, and Mendlowitz's involvement in the actions taken at CPS. As such, Mendlowitz has failed to make a persuasive argument that Moran's testimony would have had any useful bearing on this case.

Finally, it is telling that Mendlowitz does not address the standard under which my ruling excluding Moran's testimony will be reviewed by the Second Circuit. Given the pretrial and trial record, Mendlowitz has failed to demonstrate that my decision to exclude Moran's testimony was an abuse of discretion such that it was manifestly erroneous so as to warrant reversal and a new trial. *See United States v. Cruz*, 363 F.3d 187, 192 (2d Cir 2004).

Therefore, Mendlowitz's motion for bail pending appeal based upon the exclusion of

---

rates CPS charged to merchant customers; (6) interchange rates, tier pricing, dues and assessments, PCI compliance fees, IRS reporting fees, membership fees, qualified and nonqualified rates, and inactivity fees; (7) customer complaints related to fees and rates related to billing; and (8) fees charged by MasterCard and Visa; and (9) statement messages notifying merchant customers of fee or rate changes. (12-20 O&O 14-15.)

Moran's testimony is DENIED.

### B.   *Other Evidentiary Rulings*

Two of the three remaining issues that Mendlowitz claims raise substantial questions

likely to result in a reversal, a new trial, or a shorter or non-custodial sentence, are also

evidentiary rulings I made during trial.  Mendlowitz asserted he was entitled to bail pending

appeal on the grounds that I erroneously (1) excluded one portion of a recorded call he had with

David Devers[9] and (2) admitted EVO's audit report related to CPS.  Mendlowitz cited both of

these evidentiary rulings as bases for a new trial in his motion for a new trial.  Here again,

Mendlowitz essentially repeats the arguments he made in his new trial motion without

addressing the reasoning for my evidentiary rulings as detailed in my 12-20 O&O.  I do not find

these evidentiary rulings to be close questions for appeal purposes, and I see no reason to revisit

the reasons laid out in my 12-20 Opinion & Order for finding that the exclusion of the portion of

the recorded call and the admission of the audit report were proper.  Therefore, for the reasons

stated in my 12-20 Opinion & Order and those discussed below, I find that neither the exclusion

of the portion of the recorded conversation or the admission of the EVO audit report raise a

substantial question likely to result in a reversal, a new trial, or a shorter or non-custodial

sentence.  (*See* 12-20 O&O 18–21.)

In addition, Mendlowitz does not address and cannot meet the standard necessary to

disturb my evidentiary rulings.  The Second Circuit reviews a district court's evidentiary rulings

"under a deferential abuse of discretion standard, and [] will disturb an evidentiary ruling only

where the decision to admit or exclude evidence was 'manifestly erroneous.'"  *United States v.*

---

[9] Mendlowitz offered the recording of the May 26, 2015 conversation during Devers' cross-examination.  I denied admission of the recorded conversation on May 13, 2019.  (Tr. 1917.)

*McGinn*, 787 F.3d 116, 127 (2d Cir. 2015) (quoting *United States v. Samet*, 466 F.3d 251, 254 (2d Cir. 2006)).  Even if a ruling was manifestly erroneous, the case will not be reversed if the error was harmless.  *United States v. Miller*, 626 F.3d 682, 688 (2d Cir.2010).  "The error was harmless if it is not likely that it contributed to the verdict."  *McGinn*, 787 F.3d at 127.

Mendlowitz does not even address the harmless error standard, or argue that that any supposed error I may have made was not harmless.  As such, Mendlowtiz "has not carried his burden of persuading" me that his "appeal raises a substantial question of law or fact."  *Randell*, 761 F.2d at 126.  I find that even if I abused my discretion in making these evidentiary rulings— which I did not—Mendlowitz has failed to demonstrate that either my exclusion of the portion of the recording or admission of the EVO audit report evidence was not harmless.

Therefore, Mendlowitz's motion for bail pending appeal based upon the exclusion of the portion of the recorded conversation or the admission of the EVO audit report is DENIED.

### C.  *The Loss Calculation and Mendlowitz's Sentence*

In his motion for bail pending appeal, Mendlowitz argues that the loss calculation I adopted at his sentencing presents a substantial question "likely to result in a 'sentence that does not include a term of imprisonment' or 'a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.'"  (Def. Mem. 18.)  Mendlowitz does not raise any new arguments that were not made and addressed at the time of his sentencing.  For the reasons stated on the record during sentencing and discussed below, I find that the loss calculation does not present a substantial question that is likely to result in a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the time already served plus the expected duration of the appeal.  (*See* Doc. 310 at 28–33.)

16

I calculated Mendlowitz's guidelines range as 135 to 168 months' imprisonment, and the parties agreed that this was the correct range based upon my findings.  (*Id.* at 34–35.)  Probation recommended a sentence of 48 months' imprisonment.  Counsel for Defendant requested a non-custodial sentence, and the Government requested a sentence within the guidelines range.  I imposed a sentence of a year and a day, a substantial variance.  Even if I was mistaken in my calculation of the loss, I cannot conceive of a circumstance where a recalculation would result in a loss amount that would cause me to impose a sentence of less than a year and a day.  I sentenced Mendlowitz based upon his individual circumstances and did not give great weight to the loss amount—as the relatively short sentence I imposed clearly demonstrates.

Therefore, Mendlowitz's motion for bail pending appeal based upon the loss calculation is DENIED.

**IV.**    **Conclusion**

For the reasons stated above, Mendlowitz's motion for bail pending appeal is DENIED.

SO ORDERED.

Dated: October 20, 2021
       New York, New York

Vernon S. Broderick
United States District Judge